Steven PIPER, Plaintiff-Respondent,

v.

Timothy POPP, Defendant-Appellant-Petitioner,†

Supreme Court

*No. 88–2406. Oral argument November 25, 1991.—Decided April 14, 1992.*

(Also reported in 482 N.W.2d 353.)

†Motion for reconsideration denied June 3, 1992.

634

635

For the defendant-appellant-petitioner there were briefs by *David D. Cook* and *UW Legal Assistance Program,* Madison and oral argument by *Mr. Cook.*

For the plaintiff-respondent there was a brief by *Wallace K. McDonell* and *Allen, Harrison, Williams, McDonell & Swatek,* Whitewater and oral argument by *Wallace K. McDonell.*

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed May 17, 1990, affirming a judgment of the Jefferson County Circuit Court, Willis J. Zick, Circuit Judge, against the defendant Timothy Popp in the amount of $486,311.67. In our order granting the defendant's petition for review, we limited review to the sole question of "whether an indigent prisoner is entitled to appointment of counsel to represent him in defense of a civil [tort] action."

We conclude that the defendant in this case had no constitutional right to appointment of counsel, and therefore we affirm the decision of the court of appeals. Our conclusion is based on the following reasoning:

According to the United States Supreme Court's interpretation of the due process clause of the Fourteenth Amendment to the federal Constitution, a presumption exists against appointment of counsel for an indigent civil litigant when the litigant, such as the litigant in this case, will not likely be deprived of personal liberty if unsuccessful in the litigation. The United States Supreme Court requires courts to determine whether this presumption against appointment of coun-

sel is overcome by other elements in due process. After weighing the elements in due process set forth by the Supreme Court, we conclude that the defendant in the case at bar, were he not incarcerated, would not be entitled to appointed counsel under the federal constitution.

In this case the defendant is in state prison. The due process clause of the Fourteenth Amendment prohibits a state from depriving indigent litigants of the opportunity to defend themselves in a meaningful manner in civil tort actions. A state court may avert depriving indigent incarcerated defendants in civil actions of the opportunity to defend themselves in a number of ways. These include, but are not limited to, postponing trial until the prisoner is released from incarceration, granting a continuance until the prisoner can retain counsel, allowing the prisoner to appear in circuit court pro se, or appointing counsel.

In this case the circuit court allowed the defendant to appear to defend himself pro se. We conclude that ordinarily the prisoner's appearance to make a pro se defense in a civil tort action satisfies due process, just as the personal appearance and pro se defense of a nonincarcerated defendant does. Incarceration does not necessarily mandate the appointment of counsel. A prisoner who appears in circuit court to defend a civil tort action pro se should not have greater rights to appointed counsel than an indigent defendant who is not incarcerated. If, however, an indigent prisoner who appears personally in circuit court can show that incarceration has prevented the prisoner from having a meaningful opportunity to be heard as a defendant in a civil action, due process may require appointment of counsel.

We agree with the court of appeals' conclusion that no circumstances existed in this case requiring the

appointment of counsel to preserve the defendant's due process rights to defend himself in a meaningful manner. We conclude, as did the court of appeals, that the defendant's access to the prison library before trial was sufficient to secure the defendant's constitutional right to defend the case in a meaningful manner, that the circuit court did not abuse its discretion in denying a continuance, and that the circuit court did not improperly restrict the defendant's discovery efforts.

## I.

The facts are not in dispute for purposes of this review. In 1983, Timothy Popp, the defendant, shot and wounded Steven Piper, the plaintiff. The defendant also wounded Piper's father and killed Piper's mother. A jury convicted the defendant of second degree murder, attempted first degree murder, and recklessly endangering safety. The defendant is currently serving a 40 year sentence at the Waupun Correctional Institution.

The action before us is a civil action arising out of the defendant's criminal conduct. In 1985, Piper, the plaintiff, commenced a civil action against the defendant seeking to recover damages resulting from the gunshot wounds.[1] The defendant retained counsel when the complaint was filed in 1985; the defendant's attorneys withdrew from the case on May 11, 1988.

On May 25, 1988, the defendant moved to postpone a pretrial conference scheduled for June 2. He claimed he

[1] In this case the parties apparently agree that the legal action is a bona fide legal action threatening the defendant's interests; that the defendant is not merely a nominal defendant with nothing of consequence at stake; and that the defendant's interests are not virtually the same as those of another defendant who is vigorously imposing a defense.

was unable to prepare for the conference because he had not received the case file from his former attorneys. The circuit court judge denied the motion. The state transported the defendant from prison to the circuit court for the conference at which the circuit judge scheduled trial for July 27, 1988.

On June 20, 1988, the defendant moved to postpone the trial for 30 days. In an affidavit supporting the motion, the defendant again claimed that he needed additional time to prepare his defense. The circuit court denied the motion.

On July 13, 1988, the defendant claimed indigence and moved for the appointment of counsel under sec. 814.29, Stats. 1987–88. This statute governs waiver of certain fees when a party is indigent, but it is silent about appointment of counsel.[2] In an affidavit supporting the motion, the defendant claimed that the Waupun Correctional Institution failed to provide him with access to an adequate law library or adequate legal assistance. He also asserted that the legal issues in his case were complex and that his defense required the acquisition of medical and financial records. The circuit court denied the defendant's motion.

---

[2]Section 814.29 reads in relevant part:

(1)   Any person may commence, prosecute or defend any action or proceeding in any court, or any writ of error or appeal therein, without being required to give security for cost or to pay any service or fee, upon filing in the court, and receiving approval of the affidavit by the court, his or her affidavit that because of his or her poverty the person is unable to pay the costs of the action or proceeding, or any writ of error or appeal therein, or to give security for the same, and that the person believes that he or she is entitled to the redress that he or she seeks in the action or proceeding, or writ of error or appeal, and setting forth briefly the nature of the cause or appeal, or defense.

On July 27, the state transported the defendant to Jefferson county for trial of the civil action. The defendant represented himself.

During trial, while the jury considered its verdict, the circuit court explained its reasoning for refusing to appoint counsel. The circuit court concluded that no law provides for the appointment of counsel for indigent litigants in civil cases, stating as follows:

> 814.29 is a section that talks about waiving fees—I mean disbursements and charges for filing fees and things because of indigence. It says absolutely nothing about a lawyer being furnished. And there is absolutely nothing in the law that provides for free lawyers in civil cases. All kinds of provisions for free lawyers in criminal cases, but none in civil cases. Trial Court Transcript at 83.

The circuit court also reviewed the defendant's performance as advocate at trial and characterized it as "extremely effective." The circuit court commented as follows:

> Also, just one final comment on the fact of not having a counselor here. I think he did an amazingly good job. He was extremely effective in his cross-examination. Mr. Piper presented a marvelous image of rectitude and maturity, and so on, in his direct examination, and Mr. Popp succeeded on his cross-examination in bringing out a whole other facet, things which the jury never would have seen or thought of if he hadn't cross-examined. And I think his cross-examination was as effective, or more so, than a majority of lawyers would have done. I was quite impressed with it. And I would conclude there is no prejudice from not having one here, even assuming he should have had one.

641

. . . I don't think that there was anything that a lawyer could have really done for him that he didn't do himself. He had to admit the shooting, obviously, as he did. There really wasn't any way to challenge the medical bills or the wage losses. So he has challenged—a lawyer might have gotten into the merits of the pain and things than he did. So what? The jury is going to weigh that anyway, is going to decide—they heard all the evidence about the injuries and pain. They are going to make a decision. I don't think it would have been effective if some lawyer had gotten up and argued a little more about the pain wasn't that great, and so on and so on. He was able to make arguments that the lawyer couldn't with his situation and maybe elicited some sympathy he could never have done if he had a lawyer here representing him. The punitives, I gave him broad latitude to talk about all of those things. He was allowed to present that to the jury. He did argue that. He chose not to take the witness stand and testify, for whatever reasons he had. Trial Court Transcript at 86–87.

The transcript does not contain any other discussion about the appointment of counsel or the defendant's effectiveness in representing himself.

The jury awarded the plaintiff $486,311.67, including $200,000.00 in punitive damages. Because the judgment results from an assault, a "willful and malicious injury," the defendant's obligation is not dischargeable in bankruptcy. 11 U.S.C. sec. 523(a)(6).

The defendant, still representing himself, appealed the judgment against him to the court of appeals which upheld the judgment. The court of appeals concluded that no circumstances existed in this case requiring the appointment of counsel to preserve the prisoner's due process rights. It held that the defendant's access to the prison library before trial was sufficient to secure the

defendant's constitutional right to defend the case in a meaningful manner, that the circuit court had not abused its discretion in denying a continuance, and that the circuit court had not improperly restricted the defendant's discovery efforts.

Represented before this court by the University of Wisconsin Law School Legal Assistance Program, the defendant asserts that the question presented by this case is narrower than the question the court raised on granting the petition for review. His brief asserts that the circuit court has inherent authority (that is discretion) to appoint counsel for a prisoner defending a civil action and that the question the court should address in this case (and the question the defendant addresses in his brief) is whether the circuit court should exercise its inherent authority to appoint counsel in this case for this indigent incarcerated civil defendant. The defendant's counsel argues that by failing to appoint trial counsel for the defendant the circuit court abused its discretion either by erroneously concluding that it lacked inherent authority to appoint counsel or by applying inappropriate standards in determining whether to appoint counsel.

The plaintiff agrees with the defendant that under appropriate circumstances the circuit court has inherent authority to appoint counsel for an indigent unrepresented prisoner defending a civil tort action but argues that the circumstances of this case do not justify court appointed counsel.

We first discuss whether an indigent unrepresented prisoner is entitled to appointment of counsel to represent him or her in defense of a civil tort action. We then address the defendant's assertion that the circuit court erred in failing to exercise its inherent authority to appoint counsel for him.

643

## II.

The court presented the following question to the parties: is an indigent unrepresented prisoner entitled to appointment of counsel to represent him in defense of a civil tort action.[3]

To answer this question, we begin with the axiom that before the state may deprive an individual of life, liberty or property, the state must accord the individual a meaningful opportunity to be heard. In other words, litigants must be given their day in court. Access to the courts is an essential ingredient of the constitutional guarantee of due process. Whatever the precise status of the right of access to the courts, due process is satisfied "if the procedures provide an opportunity to be heard at a meaningful time and in a meaningful manner."[4]

With this axiom in mind, the issue before us can be restated as follows: does due process require the appointment of counsel to represent an indigent unrepresented prisoner in defending a civil tort action? To answer this question we first examine the decisions of the United States Supreme Court relating to the constitutional right of indigent litigants to appointed counsel. We then examine the implication of a civil defendant's incarceration on the constitutional right to appointed counsel.

---

[3]We are not discussing a litigant's right to representation by counsel the litigant retains. Article I, sec. 21(2), Wis. Const. 1989–90, states: "In any court of this state, any suitor may prosecute or defend his suit either in his own proper person or by an attorney of the suitor's choice."

[4]*State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 512, 261 N.W.2d 434 (1978) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)).

The United States Supreme Court has held that the Sixth and Fourteenth Amendments of the federal Constitution require that no indigent criminal defendant may be sentenced to a term of imprisonment unless the state has afforded the defendant the right to assistance of appointed counsel. *Gideon v. Wainwright,* 372 U.S. 335 (1963); *Argersinger v. Hamlin,* 407 U.S. 25 (1972); *Scott v. Illinois,* 440 U.S. 367, 374 (1979).[5] A court may, however, impose a monetary fine against an indigent criminal defendant without appointment of counsel. *Scott,* 440 U.S. at 369, 373. The distinction drawn in *Scott* between fines and imprisonment reveals that the litigant's interest in personal freedom triggers the right to appointed counsel. *Lassiter v. Department of Social Servs. of Durham County,* 452 U.S. 18, 25 (1981).

In some civil cases, the United States Supreme Court has concluded that certain liberty interests at stake are so fundamental that due process demands an absolute right to appointed counsel. For instance, in *In re Gault,* 387 U.S. 1, 41 (1967), the Court held that the state must appoint counsel to represent juvenile defendants in juvenile delinquency proceedings, technically civil proceedings, because the juveniles face possible commitment to an institution in which their freedom is curtailed. See also *Vitek v. Jones,* 445 U.S. 480, 496–97 (1980), where four justices concluded that indigent prisoners are entitled to appointed counsel before involuntary transfer to a state mental hospital.

---

[5]The Sixth Amendment to the U.S. Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

Article I, sec. 7, of the Wisconsin Constitution provides that "[i]n all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel." See *Carpenter v. County of Dane,* 9 Wis. 249 (*274) (1859).

As an indigent litigant's interest in personal freedom decreases, so does the constitutional necessity to appoint counsel. *Lassiter,* 452 U.S. at 26. Thus in other civil cases, the United States Supreme Court has determined that an indigent civil litigant's liberty interests do not automatically entitle the indigent litigant to appointed counsel. The indigent litigant is entitled only to an individualized determination of the constitutional necessity of appointed counsel in that case.

In *Gagnon v. Scarpelli,* 411 U.S. 778, 783–91 (1973), for example, the Court held that although probation revocation results in a loss of personal freedom, a probationer has only a diminished interest in physical liberty and an indigent probationer's right to appointed counsel in a civil probation revocation hearing must be determined on a case-by-case basis.[6] See also *State ex rel. Cresci v. H&SS Dep't,* 62 Wis. 2d 400, 409–14, 215 N.W.2d 361 (1974).

The United States Supreme Court has drawn the following generalization from these appointment of counsel cases: A presumption in favor of an indigent litigant's right to appointed counsel exists in a civil action only when, were the indigent to lose, the indigent may be deprived of physical liberty. *Lassiter,* 452 U.S. at 26. Stated another way, the presumption is that an indigent litigant has no right to appointed counsel in a civil case in the absence of at least a potential deprivation of physical liberty. *Lassiter,* 452 U.S. at 31.

[6]Parole and probation revocation hearings are not part of criminal prosecution subject to the Sixth Amendment guarantee of assistance of counsel. *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972). See also *State v. Hardwick,* 144 Wis. 2d 54, 57, 422 N.W.2d 922 (Ct. App. 1988).

When applying the presumption against an indigent litigant's right to appointed counsel, a court must, according to the United States Supreme Court, determine on a case-by-case basis whether to appoint counsel by weighing other elements in due process against the presumption against appointed counsel. *Lassiter,* 452 U.S. at 31. If the other elements in due process suffice to rebut the presumption against appointed counsel, then due process requires the appointment of counsel.

The United States Supreme Court has set forth three elements in due process to be evaluated in deciding whether counsel must be appointed: (1) the private interests at stake; (2) the risk that the procedures used will lead to erroneous decisions; and (3) the government's interest at stake. *Lassiter,* 452 U.S. at 27 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)). A court must, wrote the United States Supreme Court, "balance these elements against each other, and then set their net weight in the scales against the presumption." *Lassiter,* 452 U.S. at 27.

The application and effect of the presumption and the balancing test set forth in *Lassiter* are not totally clear, and the Court has not commented further on this issue. It is clear from *Lassiter,* however, that the need to appoint counsel for an indigent litigant in a civil case to satisfy due process is the exception, not the rule.[7]

---

[7]For discussions of the right to appointed counsel in civil cases, see, *e.g.,* Jane E. Jackson, *Lassiter v. Department of Social Services: The Due Process Right to Appointed Counsel Left Hanging Uneasily in the Mathews v. Eldridge Balance,* 8 N. Ky. L. Rev. 513 (1981); Edward G. Mascolo, *Procedural Due Process and the Right to Appointed Counsel in Civil Contempt Proceedings,* 5 W. New Eng. L. Rev. 601 (1983); Lowell F. Schechter, *The Pitfalls of Timidity: The Ramifications of Lassiter v. Department*

In the *Lassiter* case the Court upheld a state trial court's decision not to appoint counsel for Ms. Lassiter, an indigent mother defending against the state's efforts to terminate her parental rights over her son. The Court concluded that the elements in due process did not outweigh the presumption against the right to appointed counsel, even though the Court recognized parental interests as undeniably warranting deference and protection "absent a powerful countervailing interest." *Lassiter,* 452 U.S. at 27 (quoting *Stanley v. Illinois,* 405 U.S. 645, 651 (1972)).[8] The Court stated that due process does not require court appointed counsel for every

---

*of Social Services,* 8 N. Ky. L. Rev. 435 (1981); Andrew Scherer, *Gideon's Shelter: The Need to Recognize a Right to Counsel for Indigent Defendants in Eviction Proceedings,* 23 Harv. C.R.-C.L. L. Rev. 557 (1988); Karen M. Streisfeld, *The Denial of Due Process: The Unrecognized Right to an Attorney for Jeopardy Assessed Taxpayers,* 75 Cornell L. Rev. 1428 (1990); Note, *The Right to Appointed Counsel for Indigent Civil Litigants: The Demands of Due Process,* 30 Wm. & Mary L. Rev. 627 (1989); Note, *Lassiter v. Department of Social Services: A New Interest Balancing Test for Indigent Civil Litigants,* 32 Cath. U. L. Rev. 261 (1982); Note, *The Indigent's Right to Counsel in Civil Cases,* 76 Yale L.J. 545 (1967).

[8] "If in a given case, the parent's interests were at their strongest, the State's were at their weakest, and the risks of error were at their peak, it could not be said that the *Eldridge* factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel." *Lassiter,* 452 U.S. at 31.

The Court concluded that Ms. Lassiter had no constitutional right to appointed counsel in part because no expert witnesses testified and no "specially troublesome" points of law were at issue. The Court appears to have relied most heavily, however, on overwhelming evidence of Ms. Lassiter's neglect of her son. *Lassiter,* 452 U.S. at 32–33.

indigent unrepresented parent in proceedings to terminate parental rights.

Keeping the principles derived from these cases in mind, we return to the question we posed: Does due process require the appointment of counsel to represent an indigent unrepresented prisoner in defending a civil tort action? We can now divide this question into two parts—the constitutional rights of a nonincarcerated indigent defendant to appointed counsel in this civil tort action; and the implication of the defendant's incarceration on the constitutional right to appointed counsel in this civil tort action.

■

A nonincarcerated indigent defendant in the type of civil tort action involved in the case at bar does not face a potential deprivation of physical liberty and therefore does not have an absolute right to appointed counsel. The *Lassiter* presumption against appointment of counsel applies.

A determination of whether appointed counsel is necessary requires a balancing of the three elements in due process to determine whether they overcome the presumption against appointed counsel.

First, we examine the private interests at stake in this case. The property interest which the indigent civil litigant is defending in this case, while significant, is not as significant as the liberty interests at stake when a parent's parental rights are terminated. The interests at stake in the underlying civil tort action in this case are not distinguishable from those at stake in the every day civil tort actions brought for money damages.

Second, we consider the risk that the indigent civil litigant will erroneously be deprived of his or her property. As the Court explained in *Lassiter,* accurate and correct results are most likely to be obtained through the

equal contest of opposed interests. Without counsel, the contest of interests may be alarmingly unequal. *Lassiter,* 452 U.S. at 28. The court must investigate the complexity of the factual and legal issues and the capability of the indigent litigant to present the case. In this case the defendant contested only damages, not liability. The defendant asserts that without counsel he could not challenge the testimony of the plaintiff and the plaintiff's expert medical witness. Although medical evidence was presented, a lay person could understand the evidence. Nothing about the case distinguishes it from most other civil tort actions brought for money damages. The record reveals, as the circuit court and court of appeals stated, that the defendant was capable of defending himself. A lawyer might have done more, but the lack of counsel did not create a risk of an erroneous decision depriving the defendant of his property.

Third, we evaluate the government's interests. The government has an interest in a correct decision and has a pecuniary interest in avoiding the expense of appointing counsel (an interest the *Lassiter* Court characterized as weak). These interests are essentially the same governmental interests as those at stake in *Lassiter.*

When we examine the three elements in due process in this civil tort case and perform the required "weighing," we conclude that the due process elements do not overcome the presumption against appointment of counsel for the nonincarcerated indigent defendant.

The next question we must address is the implication of the defendant's incarceration on the constitutional right to appointment. The Fourteenth Amendment bars a state from denying any person a fundamentally fair trial. The due process clause of the

federal constitution thus prohibits the state from placing undue restrictions upon a prisoner's meaningful opportunity to be heard. A corollary of the constitutional guarantee of due process of law is that a state must "insure that inmate access to the courts is adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977).[9]

The state requires a civil litigant served with process to appear and defend the lawsuit or be subject to a default judgment. Yet when the state has incarcerated the litigant, the state is preventing the litigant from appearing to be heard. Requiring the person to appear or suffer consequences and at the same time preventing the person from appearing violates concepts of fundamental fairness.

Recognizing the right of an indigent prisoner to access to the courts as a defendant in a civil case does not necessarily mandate the remedy of appointed counsel. Incarceration is not in itself such an impediment as to require appointment of counsel for every indigent prisoner defending a civil tort action. The state (here the circuit court) has a number of alternatives available other than appointing counsel to avoid unconstitutional restrictions on a prisoner's due process rights to a fair trial.

The circuit court may avoid depriving an indigent prisoner of access to court by postponing trial until the prisoner's release. This alternative may be available when the postponement will not substantially prejudice the rights of the complaining party. In this case, the

---

[9]*Bounds* holds that prison authorities must provide prisoners with either adequate law libraries or adequate assistance from persons trained in the law. See also *Procunier v. Martinez*, 416 U.S. 396 (1974), declaring unconstitutional a regulation barring the assistance of law students or paralegals to interview prisoners.

defendant is serving a long prison term and the circuit court concluded in its discretion that a postponement would impair the plaintiff's interests.

The circuit court may also grant a continuance to allow the prisoner time to retain counsel. This alternative is not practical when the prisoner will not be able to obtain counsel.

Finally, the circuit court may allow the prisoner to appear in person to defend the civil tort action. In this case the defendant was able to appear personally to defend himself.

We are aware of the shortcomings of allowing prisoners to attend civil tort trials to defend themselves. First, although the defense of the lawsuit serves the prisoner's personal benefit, the state will bear the cost of transporting the prisoner to the county where the trial is to occur. Second, public safety may be threatened when prisoners are transported to court. Third, allowing prisoners to attend a trial might lead to spurious and time consuming lawsuits contrived by prisoners as a respite from their confinement. Fourth, extended absence from prison might interfere with the prison's rehabilitative or other programs.

Because of these difficulties, a circuit court may be justified in denying the prisoner the right to appear at trial. If the civil trial is to proceed, however, the circuit court may not ordinarily deny the prisoner both the right to appear personally to defend and the right to appointed counsel.

In *Payne v. Superior Court,* 17 Cal. 3d 908, 132 Cal. Rptr. 405, 553 P.2d 565 (1976), the California Supreme Court overturned the decision of a trial court that denied an indigent prisoner defendant in a civil action both the right to appear *and* the right to representation by appointed counsel. The California Supreme Court con-

cluded that the dual deprivation of appointed counsel and personal appearance violates the due process and equal protection clauses of both the federal and California constitutions.

The California Supreme Court then addressed the question we face, namely whether allowing a prisoner to defend in person without appointed counsel violates due process rights. The court acknowledged that granting indigent defendant prisoners the right of personal appearance and denying them appointed counsel seems to place the indigent prisoner in the same position as the indigent free person who is a defendant in a civil tort action. The California court concluded, however, that the prisoner and the free person are not comparable. A prisoner does not have the same access to free legal services as a nonprisoner and a prisoner may not, because of incarceration, have the capability to pursue witnesses and evidence. The California Supreme Court held that the appointment of counsel for the indigent prisoner defendant "is not an absolute right" but "is in many instances the only remedy enabling a prisoner to obtain access to the courts." *Payne,* 553 P.2d at 576.[10]

---

[10]In determining whether to appoint counsel, the California Supreme Court instructed trial courts to consider whether the prisoner is indigent, a continuance is not feasible, the prisoner's interests are actually at stake, and an attorney would be helpful under the circumstances of the case. 553 P.2d at 577.

In *Yarbrough v. Superior Court,* 39 Cal. 3d 197, 216 Cal. Rptr. 425, 702 P.2d 583, 585 (1985), the California Supreme Court reaffirmed *Payne,* without discussing *Lassiter,* holding that "in an appropriate case, and as a last alternative, appointment of counsel may be the only way to provide an incarcerated, indigent civil defendant with access to the courts for the protection of threatened personal and property rights." The court stressed that access—not the right to counsel—is the keystone to the *Payne* inquiry.

We conclude that ordinarily the prisoner's appearance in circuit court to make a pro se defense in a civil tort action satisfies due process, just as the nonincarcerated defendant's pro se defense satisfies due process. Incarceration does not necessarily mandate the appointment of counsel. A prisoner who appears pro se in a civil tort action as a defendant should not have greater rights to appointed counsel than an indigent defendant who is not incarcerated. If, however, an indigent prisoner who appears personally in circuit court can show that incarceration has prevented the prisoner from having a meaningful opportunity to be heard as a defendant in a civil action, due process may require appointment of counsel.

The defendant claims that the circuit court's refusal to appoint counsel denied him meaningful access to the courts, because his incarceration prevented him from preparing adequately for his own defense. The defendant asserts that he did not receive adequate access to the prison law library; that he did not receive adequate time to conduct discovery; and that the circuit court abused its discretion in refusing to grant a continuance.

In *Bounds,* 430 U.S. at 828, the Supreme Court ruled that the constitutional right of meaningful access to the courts requires prison authorities to furnish prisoners with either "adequate law libraries or adequate assistance from persons trained in the law." Courts must examine the entirety of a prison program furnishing inmates with access to legal resources to determine whether the program provides meaningful access to the courts. 430 U.S. at 830–32.

In a letter to the circuit court dated July 21, 1988, the defendant alleges that the prison limited his access

to the law library to five hours per week, limited the books he could check out of the library, and did not provide trained legal staff to assist inmates in the library. In the letter, the defendant also states that he was fortunate to receive assistance from an inmate certified as a paralegal assistant. We agree with the court of appeals that these resources, plus almost three years of representation by retained counsel prior to trial, satisfy the defendant's right to meaningful access to the courts.

Furthermore, we agree with the court of appeals that the circuit court acted fully within the scope of its discretion in denying the defendant's request for a continuance to prepare his case further and to conduct additional discovery. The defendant argues that the circuit court would have granted a continuance if the defendant had been able to find new counsel and therefore the circuit court should have granted the defendant who was to defend himself pro se a continuance. The defendant ignores that a newly retained counsel must acquaint himself or herself with the facts and law of the case, with which the defendant was already well acquainted. Furthermore counsel may have the press of other business and the defendant apparently does not. We do not believe that the defendant has shown that the circuit court abused its discretion or denied him a meaningful opportunity to be heard.

In summary, we conclude that the defendant in this case had no right to appointment of counsel, and therefore we affirm the decision of the court of appeals. A presumption against appointment of counsel for an indigent civil litigant exists when a litigant will not likely be deprived of personal liberty if unsuccessful in the litigation. The presumption was not overcome in this case.

655

Furthermore, given the opportunity to appear in circuit court and defend himself pro se, the defendant has not shown that his incarceration deprived him of a meaningful opportunity to be heard.

## III.

We now address the defendant's assertion that the circuit court erred in failing to exercise its inherent authority to appoint counsel for the indigent incarcerated prisoner in this case.

The defendant does not assert a broad right to appointed counsel for all indigent prisoners who appear personally as defendants in civil tort actions. The defendant's brief urges that a circuit court should exercise its inherent authority to appoint counsel for an imprisoned indigent civil defendant under the following set of circumstances: (1) when the inmate's property interests are genuinely threatened by the action and the resulting judgment is nondischargeable in bankruptcy; (2) when the inmate has meritorious defenses to the damages claimed; (3) when alternatives to the appointment of counsel, such as granting a continuance of the case until the inmate's release from prison or permitting a codefendant to defend the inmate's interests are unfeasible or unavailable; (4) when the inmate is incapable of identifying, preparing, and presenting the complex legal and factual issues of the case; (5) when the case raises an unresolved legal issue of substantial and continuing public interest; and (6) when the complainant, through a private party, seeks enforcement of public interests in retribution and deterrence by means of punitive damages.

The defendant asks us in the alternative to adopt the standards used by the federal courts in exercising

their powers granted under 28 U.S.C. sec. 1915(d)[11] to appoint counsel for indigent persons.[12] The Seventh Circuit Court of Appeals has set forth five nonexclusive factors that a district court should consider when exercising its discretion in deciding a motion to appoint counsel for an indigent person: (1) the merits of the indigent's claim; (2) the ability of the indigent to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed when both sides are represented by counsel; (4) the capability of the indigent to present the case; and (5) the complex-

---

[11]28 U.S.C. sec. 1915 provides, in relevant part:

(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor.

. . .

(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

[12]The Wisconsin Legislature has granted the right to appointed counsel in several types of civil cases. See, *e.g.*, sec. 48.23(1), Stats. 1989–90 (right to appointed counsel for children subject to proceedings under the Children's Code); sec. 48.42(4)(c), Stats. 1989–90 (right to appointed counsel in termination of parental rights proceedings); sec. 51.20(3), Stats. 1989–90 (right to appointed counsel for persons subject to involuntary civil commitment proceedings); sec. 57.06(3), Stats. 1989–90 (right to appointed counsel in probation and parole revocation proceedings); sec. 767.52, Stats. 1989–90 (right of the putative father to appointed counsel in certain paternity proceedings).

Paraphrasing the *Lassiter* Court, 452 U.S. at 34, we do not imply by our decision that statutorily enacted rights to appointed counsel broader than those provided by the constitution are anything "other than enlightened and wise."

ity of the legal issues raised by the complaint.[13]

We agree with the parties that a circuit court possesses inherent authority to appoint counsel for indigent litigants.[14] This court has explicitly stated that circuit courts possess the inherent power to appoint counsel for the representation of indigents and that the power of appointment "is not tied to any constitutional right that the indigent may have to counsel." *In the Matter of Contempt in State v. Lehman,* 137 Wis. 2d 65, 76, 403 N.W.2d 438 (1987). In *Lehman* we upheld the circuit court's inherent power to appoint counsel to assist an indigent criminal defendant who elected to proceed pro se. The court has also held that circuit courts have inherent authority to appoint counsel for indigent inmates in conditions-of-confinement cases. *Office of the State Public Defender v. Dodge County Circuit Court,* 104 Wis. 2d 579, 590, 312 N.W.2d 767 (1981).

We do not adopt the guidelines the defendant suggests. We conclude that the existing case law providing that every person has a right to be heard in a meaningful manner provides sufficient guidelines for a circuit court to exercise its inherent powers to appoint counsel.

We hold that, when a prisoner is a defendant in a civil tort action, due process requires that the state grant the prisoner a meaningful opportunity to be heard. The

[13]See *Merritt v. Faulkner,* 697 F.2d 761, 764 (7th Cir. 1983) (citing *Maclin v. Freake,* 650 F.2d 885, 887–89 (7th Cir. 1981) (per curiam)). For similar tests, see *Cookish v. Cunningham,* 787 F.2d 1, 3 (1st Cir. 1986); *Ulmer v. Chancellor,* 691 F.2d 209, 212–13 (5th Cir. 1982).

[14]For a discussion of courts' inherent power, *see, e.g., Jacobson v. Avestruz,* 81 Wis. 2d 240, 247, 260 N.W.2d 267 (1977).

circuit court must determine, subject to appellate review, how a meaningful opportunity to be heard is to be achieved in the particular case. We conclude that the defendant in this case does not have a constitutional right to appointed counsel, given that he had no liberty interest at stake, appeared personally in circuit court to defend himself, and had a meaningful opportunity to defend himself pro se.

For the reasons set forth, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.