GUNDRUM, J.[1]
¶ 1 Brian Lucas appeals pro se from an order of the circuit court finding him guilty of operating a motor vehicle while under the influence of an intoxicant (OWI). We affirm.
Background
¶ 2 On January 2, 2017, Lucas was arrested for OWI, first offense. After being found guilty of this violation in municipal court, he appealed for a trial de novo to the circuit court. A trial was held to the court after which he again was found guilty. Lucas appeals.
Discussion
¶ 3 Lucas raises two issues on appeal, neither of which is sufficiently briefed in the one paragraph he devotes to each issue in his brief-in-chief. First, he asserts the circuit court erred in declining to appoint counsel to represent him for his trial. Second, he claims the court found him guilty "by using evidence that was not introduced at the trial."
¶ 4 On the first issue, Lucas complains about the circuit court's denial of his morning-of-trial request to be represented by counsel. As the appellant, Lucas bears the burden of demonstrating that the circuit court erred. See Gaethke v. Pozder , 2017 WI App 38, ¶ 36, 376 Wis. 2d 448, 899 N.W.2d 381. While he cites us to the pages of the trial transcript where this denial occurred, he provides us with no standard of review, cites to no legal authority, and develops no legal argument to convince us that the circuit court erred. As a result, Lucas cannot meet his burden. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."); see also Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments [for the parties]."). While we recognize that Lucas is a pro se litigant, he is still required to abide by the same rules governing attorneys. See Waushara Cty. v. Graf , 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992).
¶ 5 All that said, we note the following. On the morning of trial, Lucas requested that he be provided with counsel-that the circuit court appoint counsel to represent him. The court responded: "I can't appoint counsel on a civil case, so your motion for an attorney at public expense is denied." As the trial was about to begin, Lucas moved to dismiss the case because he was "without counsel" and proceeding would put his "life and liberty in jeopardy." The court denied Lucas' motion to dismiss.
¶ 6 As previously stated, Lucas has provided us with no legal authority or legal argument as to how the circuit court erred. Furthermore, as the Village points out, Lucas made no representation to the circuit court that he is even indigent and cannot afford to hire counsel. See State v. Buelow , 122 Wis. 2d 465, 469, 363 N.W.2d 255 (Ct. App. 1984) ("The burden of proof to establish indigency is on the defendant who seeks appointed counsel."). Even if indigent, Lucas has developed no argument that his physical liberty was threatened by this first offense, civil forfeiture, OWI citation and, thus, he faced a presumption against appointment of counsel. See Piper v. Popp , 167 Wis. 2d 633, 646, 482 N.W.2d 353 (1992). We also note Lucas' municipal court trial on this citation was held, and Lucas was convicted, on July 19, 2017. He then appealed the conviction to circuit court and a "Notice of Hearing" was mailed to Lucas on or around August 22, 2017, notifying him that his circuit court trial would be held on October 2, 2017, as it was. Thus, Lucas had ample time to secure counsel on his own prior to the trial in the circuit court that he requested.
¶ 7 Lucas next complains that, in its ruling following presentation of the evidence, the circuit court stated it did not find credible his testimony that he only had one drink, around 3:00 a.m. the morning of his arrest, when the Intoximeter reading at 6:54 a.m. indicated .05 BAC. While Lucas complains that in making this statement the court "used evidence that could only be testified to by an expert witness and no expert was called to testify at trial," his complaint is completely undeveloped. He again cites to no law and develops no legal argument to convince us the court erred in any way. As a result, he fails to carry his burden to convince us the circuit court erred.
¶ 8 Additionally, we note Lucas was charged with and convicted of OWI, not operating with a prohibited alcohol concentration (PAC). Thus, any complaint related to the Intoximeter test only registering a .05 only goes so far. One can be convicted of OWI with a BAC level below the "legal limit" of .08. For Lucas' conviction, the circuit court had to find him to have been operating a motor vehicle while "[u]nder the influence of an intoxicant."
"Under the influence of an intoxicant" means that the defendant's ability to operate a vehicle was impaired because of consumption of an alcoholic beverage.
... What must be established is that the person has consumed a sufficient amount of alcohol to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle.
WIS JI-CRIMINAL 2669. As shown hereafter, the evidence presented to the court established this and the court properly found this.
¶ 9 Furthermore, we observe that the Intoximeter test indicated Lucas had a .05 reading approximately an hour and a half after police found him behind the wheel of his car with the engine running and almost four hours after he claimed to have had his last (and, according to him, his only) drink of alcohol. The circuit court had no reason to believe his BAC level was only .05 at the time he was operating his vehicle , which is the time relevant to his conviction.
¶ 10 An officer testified at trial that she made contact with Lucas around 5:24 a.m. after a caller notified police that "someone was passed out, asleep unconscious behind the wheel of a car." Arriving at the location identified by the caller, the officer observed Lucas' vehicle was running but parked in a "no parking" zone "facing eastbound in the westbound lane." Lucas was the only occupant of the vehicle and he was sitting in the driver's seat "slumped over asleep up against the window." The officer knocked on the window to wake Lucas, telling him he "needed to roll down the window and talk to me." Lucas was "startled" and "put his car into drive and drove forward," and the officer ran after the car identifying herself as "police" and yelling that he needed to stop and talk to her. Lucas stopped after driving "maybe ... 100 feet."
¶ 11 Lucas admitted to the officer that he had been drinking but indicated that had been "way earlier in the evening." The officer observed his eyes to be "red and glassy" and his speech to be "slow." The officer had Lucas perform field sobriety tests, observing five clues of intoxication on the horizontal gaze nystagmus (HGN) test, six clues on the walk-and-turn test, and four clues on the one-leg-stand test. After giving Lucas a preliminary breath test, she placed him under arrest and took him to the police department. There she administered an Intoximeter breath test to Lucas, which produced a result of .05 at 6:54 a.m. Referring to an "Alcohol and Drug Influence Report" she filled out the day of the arrest, the officer noted that she also had observed a "[m]oderate smell of alcohol" coming from Lucas and that his speech was slow and also "slightly slurred."
¶ 12 In its ruling, the court found the following: (1) the testimony of the arresting officer was credible; (2) the officer found Lucas in his car with the engine running around 5:24 a.m. "slumped or leaning over against the window," in a "no parking" zone, and "facing the wrong direction from the direction of traffic on the side of the street"; (3) the officer knocked on the window to wake Lucas, and Lucas was "startled" and drove forward about 100 feet before stopping; (4) Lucas told the officer he had had been drinking but "way earlier"; (5) the officer observed Lucas' eyes to be red, glassy, his speech to be slow, and that he exhibited five clues of intoxication on the HGN test, six clues on the walk-and-turn test, and four clues on the one-leg-stand test; and (6) the Intoximeter test showed .05.[2] The court stated that while Lucas testified at the trial that he had had "[o]ne drink" "at 3:00 a.m.," it did not find such testimony credible.
¶ 13 The court had before it more than ample evidence from which to legitimately question the veracity of Lucas' testimony that he only had "one" drink, around 3:00 a.m., yet had a reading of .05 nearly four hours later. Moreover, whether he had one drink or more than one drink, is not the relevant question. As the circuit court noted in its ruling, "[t]he question is was he under the influence such that he had consumed a sufficient amount of alcohol to cause him to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle." The court found that Lucas was in such condition and the evidence fully supports that finding.
¶ 14 The circuit court did not err in finding Lucas guilty of operating a motor vehicle while under the influence of an intoxicant.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(c) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Although the court did not specifically reiterate that the "Alcohol and Drug Influence Report" indicated that the officer also had noticed a "[m]oderate smell of alcohol" on Lucas' breath, that evidence was uncontested at trial and the court found the officer to be credible.