COURT OF APPEALS
DECISION
DATED AND FILED

June 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.   **2021AP43**
                    **2021AP44**

Cir. Ct. Nos.  **2019TP5**
                       **2019TP6**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

---

NO. **2021AP43**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K. E.,
A PERSON UNDER THE AGE OF 18:

B. W.,

  PETITIONER-RESPONDENT,

  V.

S. H.,

  RESPONDENT-APPELLANT.

---

NO. **2021AP44**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO C. H.,
A PERSON UNDER THE AGE OF 18:

B. W.,

  PETITIONER-RESPONDENT,

  V.

**S. H.,**

    **RESPONDENT-APPELLANT.**

---

        APPEALS from orders of the circuit court for Trempealeau County: RAMONA A. GONZALEZ, Judge. *Reversed and cause remanded with directions.*

    ¶1    SEIDL, J.[1]  S.H. appeals from orders entered in two cases, now consolidated on appeal, terminating his parental rights to his two children on the grounds of the continuing denial of his periods of physical placement under WIS. STAT. § 48.415(4).[2]  S.H. argues that § 48.415(4) facially violates his constitutional right to equal protection under the law.  It does so, he contends, because it allows for parental rights to be terminated through a family court order without proof that such order denying the parental placement contained a warning that the parent's rights could be terminated if that order remained unchanged, whereas proof of such a warning is required for termination under § 48.415(4) for juvenile court actions.  S.H. further argues that the right of parents to have a relationship with their child is a fundamental liberty interest protected by the

---

    [1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

    [2] Cases appealed under WIS. STAT. RULE 809.107 "shall be given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply …." *See* RULE 809.107(6)(e). Conflicts in this court's calendar have resulted in a delay. It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

Fourteenth Amendment, thereby triggering strict scrutiny review that § 48.415(4) cannot survive. S.H. also contends that § 48.415(4), as applied to him, violates his right to equal protection because the underlying family court order that B.W. relied upon to obtain summary judgment in this action did not contain a notice of termination as is required in juvenile court actions.

¶2 Finally, S.H. argues that WIS. STAT. § 48.415(4), as applied to him, violates his right to substantive due process because it allowed him to be deemed an unfit parent without consideration of his poverty. S.H. argues that his indigence hampered his access to the family courts because a fee the circuit court required him to pay before he could schedule a hearing prevented consideration of his repeated attempts to regain placement of his children. We reject S.H.'s equal protection challenges, but we reverse the summary judgment on his as-applied substantive due process challenge and remand with directions.

## BACKGROUND

¶3 In 2007, a circuit court entered an order for support in response to a petition for child support made by B.W., the mother of the two children involved in these appeals, requiring S.H. to pay child support. The order also granted B.W. and S.H. joint legal custody of the children, and it granted primary physical placement to B.W. The court granted S.H. "secondary periods of physical placement at reasonable times upon reasonable notice."

¶4 In June 2014, a temporary order was entered based on the parties' stipulation, retaining the joint legal custody established in the 2007 order, but denying periods of placement to S.H. "[u]ntil a suitable reunification plan can be established." The circuit court also appointed a guardian ad litem ("GAL"), and it

ordered that B.W. be responsible for paying the GAL's hourly fee. S.H. continuously failed to make contact with the GAL over the following months—in violation of the court's instructions—and, as a result, the court dismissed the GAL. At a September 2014 hearing, the court imposed a requirement that S.H. pay a $1,000 GAL fee, and it ordered that it would not hold a hearing on changing placement until the fee was paid. A reunification plan was never established.

¶5    S.H. attempted to establish a reunification plan a number of times, filing pro se motions in both July and September 2014 seeking to modify child support and to establish an equal placement arrangement between both parents. In both motions, S.H. requested that court costs be waived. Both times the circuit court complied and found him to be indigent. S.H. failed to properly serve those motions, however, and the court ultimately denied them.

¶6    In February 2015, S.H. properly filed a motion to change placement, and the circuit court scheduled a hearing. But after B.W. sent a letter to the court reminding it of the mandatory GAL fee it had imposed on S.H., the court cancelled the hearing, informing the parties that it would not schedule any further placement hearings until S.H. posted the $1,000 GAL fee.

¶7    S.H. filed several more petitions to establish placement with the parties' children over the following years, each seeking to waive costs and fees. He was found indigent each time, but the circuit court never scheduled a hearing on placement because S.H. never paid the $1,000 GAL fee. On May 1, 2019, the court granted a petition to waive S.H.'s responsibility for the GAL fee. Although S.H. and the GAL discussed having a meeting, S.H. never met with the GAL or attempted to schedule a hearing on placement.

¶8     In July 2019, B.W. filed petitions seeking to terminate S.H.'s parental rights to their two children, to which S.H. entered a denial.  Although B.W. initially alleged multiple grounds in support of her petitions, at the court's request, she filed a motion for summary judgment solely on the continuing denial of physical placement ground under WIS. STAT. § 48.415(4).   In response to B.W.'s motion, S.H. argued that:  (1) § 48.415(4) was unconstitutional on its face, violating his equal protection rights; and (2) the statute violated substantive due process as applied to him because it allowed the court to find him to be an unfit parent, even though his indigence prevented him from mounting a meaningful challenge to the order denying him child placement.[3]

¶9     At a hearing on the motion, the circuit court granted partial summary judgment in favor of B.W., rejecting S.H.'s equal protection argument relating to WIS. STAT. § 48.415(4) and concluding that grounds had been established to find S.H. an unfit parent.  The case proceeded to the dispositional phase, and the court terminated S.H.'s parental rights, finding that neither child had a substantial relationship with S.H., and that it would not be harmful for them to sever ties with him.  S.H. now appeals the circuit court's summary judgment order concluding that grounds existed to terminate his parental rights.

---

[3] Not raised in the circuit court proceedings was S.H.'s argument on appeal that WIS. STAT. § 48.415(4) is unconstitutional as applied to him on equal protection grounds.  Although we need not consider new arguments raised for the first time on appeal, we have the discretion to do so.  *State v. Huebner*, 2000 WI 59, ¶¶10-12, 235 Wis. 2d 486, 611 N.W.2d 727.  Because both parties have thoroughly briefed the issue, we elect to address it.

## DISCUSSION

### I. *Facial equal protection challenge*

¶10    S.H. first argues that the continuing denial of physical placement ground under WIS. STAT. § 48.415(4), as interpreted in ***Kimberly S.S. v. Sebastian X.L.***, 2005 WI App 83, 281 Wis. 2d 261, 697 N.W.2d 476, violates his equal protection rights on its face because it does not require proof that a family court order denying a parent physical placement for more than one year warned the parent that his or her rights could be terminated should that order remain in place.[4] By contrast, for parents in a juvenile delinquency court proceeding, or a proceeding in which his or her child has been adjudicated in need of protection or services (CHIPS), who are facing the same continuing denial ground under § 48.415(4), the petitioner must prove that the order denying visitation warned the parents of a possible termination of their rights should the denial of visitation continue.  The statute establishes that a ground for termination exists when the following is proven:

> (a) That the parent has been denied periods of physical placement by court order in an action affecting the family or has been denied visitation under an order under s. 48.345, 48.363, 48.365, 938.345, 938.363 or 938.365

---

[4]  The court in ***Kimberly S.S. v. Sebastian X.L.***, 2005 WI App 83, ¶7, 281 Wis. 2d 261, 697 N.W.2d 476, interpreted the plain language of WIS. STAT. § 48.415(4), holding that the requirement that a juvenile court order contain a termination warning does not apply to a family court proceeding under the same statute.  The court in ***Kimberly S.S.*** did not, however, address the constitutionality of the statutory disparity inherent in § 48.415(4)—because the claim was not adequately developed in the case.  ***Kimberly S.S.***, 281 Wis. 2d 261, ¶12.  Thus, although the plain language of § 48.415(4) treats the two situations differently, ***Kimberly S.S.*** does not provide guidance on whether the disparity violates the equal protection rights of parents in family court proceedings.

containing the notice required by s. 48.356(2) or 938.356(2).

(b) That at least one year has elapsed since the order denying periods of physical placement or visitation was issued and the court has not subsequently modified its order so as to permit periods of physical placement or visitation.

Sec. 48.415(4).  S.H. contends that the disparity in the proof required to find a parent unfit between family court and juvenile court proceedings disadvantages parents subject to termination under § 48.415(4) who are denied placement in family court, which violates their equal protection rights.

¶11    Whether a statutory termination of parental rights (TPR) ground violates S.H.'s constitutional rights is a question of law reviewed independently by the appellate court.  *See Monroe Cnty. D.H.S. v. Kelli B.*, 2004 WI 48, ¶16, 271 Wis. 2d 51, 678 N.W.2d 831.  To prove an equal protection violation, the party challenging a statute's constitutionality must show that the state unconstitutionally treats members of similarly situated classes differently.  *Waupaca Cnty. v. K.E.K.*, 2021 WI 9, ¶33, 395 Wis. 2d 460, 954 N.W.2d 366.  Generally, a statute is presumed to be constitutional, and a party challenging that constitutionality must demonstrate the statute is unconstitutional beyond a reasonable doubt.  *Dane Cnty. DHS v. P.P.*, 2005 WI 32, ¶18, 279 Wis. 2d 169, 694 N.W.2d 344.

¶12    S.H. argues that the two classes of parents in WIS. STAT. § 48.415(4) are similarly situated, which is a first required step in an equal protection challenge.  *See K.E.K.*, 395 Wis. 2d 460, ¶33.  S.H. contends that although the family court orders referenced in § 48.415(4) deny physical placement, while the juvenile court orders deny visitation of a child adjudicated CHIPS, the end results are the same.  S.H. therefore contends that the two classes of parents are ultimately

7

similar: both are subject to court orders denying them access to their children—either in the form of visitation or placement. He argues that the respective orders require a similar (though not identical) finding that a child's welfare or health is at risk and the orders must have gone unmodified for more than one year for those orders to serve as a ground under § 48.415(4).

¶13 We disagree that the two classes of parents are similarly situated. Although S.H. identifies some similarities between the classes, mere parallels between certain aspects of distinct classes do not render those classes of parents similarly situated for the purposes of an equal protection analysis. The two classes of parents are fundamentally different because WIS. STAT. ch. 48 actions in juvenile court involve significant and mandatory state action and procedures surrounding the TPR, while WIS. STAT. ch. 767 cases in family court do not. In a ch. 48 action, the state removes a child from a parent's custody if the child's welfare demands it, and it then establishes the requirements a parent must meet in order to reestablish care, custody or visitation. *See* WIS. STAT. §§ 48.19 and 48.355(2)(b)7. The state monitors the parents' progress toward meeting those conditions, and if they are not met within a certain time limit, the state *must* initiate a TPR action. *See* WIS. STAT. § 48.417(1)(a).

¶14 By contrast, in a WIS. STAT. ch. 767 action in family court, only a party may petition the circuit court to stop placement or ultimately request that a parent be found unfit under WIS. STAT. § 48.415(4). *See* WIS. STAT. §§ 767.41; 767.461. The statutes do not require any conditions to be imposed on the parent in order for him or her to be allowed placement of his or her children, no state entity monitors or supervises the parent's behavior or success in meeting any conditions set by the court, and there are no time limits that a parent must meet to avoid a

TPR, which is not mandatory. *See* §§ 767.461; 767.471. Although a parent *may* move for TPR under § 48.415(4), there is no requirement that a parent do so. A parent denied placement can petition to have his or her rights reinstated at any time, and if either party fails to meet placement obligations, it is a party, and not the court, who must move to enforce those obligations. *See, e.g.*, § 767.471.

¶15    The mandatory state actions in juvenile court—comprised of careful conditions, monitoring, and mandatory TPR upon certain conditions—are significantly dissimilar from family court proceedings, which have no such requirements and involve a different character of action—i.e., those not being imposed by the state.[5]  Accordingly, the two classes of parents are not similarly situated for purposes of equal protection, and S.H. has failed to rebut the presumption of constitutionality.[6]

---

[5] The circuit court made a similar observation in denying S.H.'s equal protection claim, stating:

> I am satisfied that there is a difference between a state action in a Chapter 48 proceeding in which the State is seeking to terminate—potentially terminate the—the parental rights of parents, and as such, those warnings are required to be made within the context of the state action. This is a—in the family court action it is an action between two parents. I think there's a—there is no state action here, and I am satisfied that at this time your arguments for equal protection fail, as does your argument with regard to … any other factual problems with this order.

[6] The parties argue at length for different standards of review to apply to the equal protection claim at issue, a distinction hinging on whether a fundamental right was implicated in finding S.H. unfit under WIS. STAT. § 48.415(4). Because the classes are not similar for the purposes of S.H.'s equal protection claim, that claim fails at the outset, and we need not determine which standard of review would apply.

## II. As-applied equal protection challenge

¶16    S.H. also argues that WIS. STAT. § 48.415(4) is unconstitutional as applied to him because the underlying family court order denying him placement did not include a termination warning.  In an as-applied challenge, the reviewing court considers the facts of the particular case, and the challenger must show that his or her constitutional rights were actually violated.  *Michels v. Lyons*, 2019 WI 57, ¶11, 387 Wis. 2d 1, 927 N.W.2d 486.  We have already determined that the distinction drawn in § 48.415(4) between dissimilar classes of parents does not violate equal protection, and the plain language of § 48.415(4) expressly dictates that a termination warning is not required in a family court proceeding.  *See Kimberly S.S.*, 281 Wis. 2d 261, ¶7.  The application of these provisions to S.H. is no different than would occur with any other parent under the same circumstances.  Therefore, S.H.'s right to equal protection as applied to him was not violated when he was not provided with such a warning in the family court order.

## III. Due process challenge

¶17    Finally, S.H. contends that WIS. STAT. § 48.415(4) is unconstitutional as applied to him because it violates his right to substantive due process.  Specifically, he asserts that the statute, as applied by the circuit court, allowed the court to find him unfit based on the unmodified 2014 family court order denying him placement without regard for the reasons that the order was not modified.  That modification, S.H. alleges, could have been a defense to the termination of his parental rights.  S.H. argues that the court improperly found grounds to terminate his rights by failing to consider that his indigence prevented

his access to the family court, insomuch as he was not allowed to schedule a hearing until he paid a court-ordered fee.

¶18　Substantive due process rights protect against a state act that is arbitrary, wrong or oppressive, regardless of whether the procedures applied to implement the action were fair. ***P.P.***, 279 Wis. 2d 169, ¶19. The strict scrutiny standard of review applies to as-applied substantive due process challenges to WIS. STAT. § 48.415(4), and it requires that the government action to terminate S.H.'s parental rights was narrowly tailored to meet the compelling interest of protecting children from unfit parents.[7] *See **Kenosha Cnty. DHS v. Jodie W.***, 2006 WI 93, ¶41, 293 Wis. 2d 530, 716 N.W.2d 845. A party challenging the constitutionality of a statute as applied must show beyond a reasonable doubt that the statute is unconstitutional as applied to the specific facts at hand. ***Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund***, 2018 WI 78, ¶24, 27, 383 Wis. 2d 1, 914 N.W.2d 678.

¶19　Although the circuit court originally required B.W. to pay the court-appointed GAL fee, when S.H. failed to appear at meetings or to otherwise contact the GAL, the court eventually dismissed the GAL and mandated that S.H. pay a $1,000 GAL fee before any future hearing would occur. When S.H.

---

[7] Although B.W. argues generally that S.H.'s constitutional challenges should only be afforded rational basis review, she does not argue for use of this standard specifically regarding the as-applied due process challenge, nor does she elaborate as to how a different level of scrutiny would change the analysis as it relates to due process. Regardless, the fee imposed on S.H.— being a complete bar to S.H. accessing the courts due to his indigence on a matter affecting his fundamental rights to parent his children—violates S.H.'s right to due process under either rational basis or strict scrutiny review, and B.W.'s contention regarding the applicable level of scrutiny therefore has no practical effect on the proceedings.

properly served a motion seeking a hearing on placement, the court first scheduled, but later canceled, the hearing after realizing that S.H. had not paid the $1,000 fee, and it ordered that no hearing on placement would occur until that fee was paid.

¶20    B.W. notes that the circuit court eventually waived S.H.'s GAL fee as a result of his indigence on May 1, 2019, affording him an opportunity to schedule a hearing to regain placement of his children. After failing to hear from S.H., the GAL contacted S.H. in June 2019 in an attempt to schedule a meeting. S.H. indicated that he would be available in early July and that he would call to schedule the meeting once he had confirmed his transportation. S.H. never contacted the GAL to confirm the meeting, nor did he attempt to schedule a hearing on placement. On July 23, B.W. filed the petition to terminate S.H.'s parental rights. B.W. contends that if S.H. had scheduled a hearing that led to him being granted placement during this time, the continuing denial ground would no longer have applied.

¶21    Be that as it may, the United States Supreme Court has held that in TPR proceedings, a parent's access to the judicial system cannot "turn on [one's] ability to pay." *M.L.B. v. S.L.J.*, 519 U.S. 102, 124 (1996). Because it concluded that TPR decrees "work[] a unique kind of deprivation," the court "place[d] decrees forever terminating parental rights in the category of cases in which the State may not 'bolt the door to equal justice.'" *Id.* at 118, 124 (citations omitted). Here, S.H. was actively and repeatedly denied the ability to schedule a hearing to regain placement of his children, despite his indigence, and despite his efforts to obtain a hearing. The fee imposed on S.H. conditioned his access to the judicial system on his ability to pay, which is impermissible.

12

¶22 Our decision in ***Olmsted v. Circuit Court for Dane County***, 2000 WI App 261, 240 Wis. 2d 197, 622 N.W.2d 29, is instructive. In that case we determined a circuit court violated an indigent mother's substantive due process rights by requiring her to pay GAL fees when she attempted to modify the terms of her placement with her children. Initially, the circuit court required that both she and the child's father pay a GAL fee of $50 a month, but this court recognized that WIS. STAT. § 767.407 strongly indicated that indigent parties should not be ordered to pay GAL fees. ***Olmsted***, 240 Wis. 2d 197, ¶10. We therefore held that requiring an indigent party to make "up-front" payments for the services of a GAL infringes on the party's due process right of access to the courts. ***Id.***

¶23 Even though the circuit court in this case eventually waived S.H.'s GAL fee, affording him roughly a two-month window in which to schedule a hearing, the fee it had until then imposed was still an impermissible barrier to the courts for several years that, as in ***Olmsted***, violated S.H.'s due process rights during the time it was in effect. We note that by the time the court waived S.H.'s obligation to pay the $1,000 GAL fee, the one-year deadline under WIS. STAT. § 48.415(4)(b) to obtain modification had long since passed. Requiring a party to pay a GAL fee for past legal services as a result of his or her misconduct may be permissible under a court's inherent authority to issue sanctions. *See **Schultz v. Sykes***, 2001 WI App 255, ¶10, 248 Wis. 2d 746, 638 N.W.2d 604. However, preventing an indigent party from scheduling a hearing with the court until a fee is paid at the outset is not permissible, as it infringes on that party's due process right to access the courts. Such access is "an essential ingredient of the constitutional guarantee of due process." ***Piper v. Popp***, 167 Wis. 2d 633, 644, 482 N.W.2d 353 (1992).

13

¶24 Accordingly, under the specific facts of this case, the circuit court's application of WIS. STAT. § 48.415(4) to S.H. violated his right to substantive due process because the court found him to be an unfit parent without any consideration that his indigence—which resulted in the lengthy bar from the courtroom—was the reason for the continuing denial of his ability to seek changes to his placement. As applied to S.H., the continuing denial of physical placement ground was not narrowly tailored to meet the compelling interest of protecting S.H.'s children from an unfit parent, because the circuit court failed to consider these relevant factors.

¶25 B.W. responds to S.H.'s due process claim with three arguments. First, she contends that because S.H. stipulated to the June 2014 order denying placement, the continuing denial of his placement was effectively self-imposed, defeating his due process claim. We disagree with this logic. Although S.H. stipulated to the initial order denying placement, that order was only intended to be temporary, and the record shows that S.H. attempted to modify it several times but was barred due to improper service and then for his failure to pay a court-ordered GAL fee. For the purposes of due process and whether the circuit court should have considered S.H.'s poverty, the fact that he stipulated to the original, underlying order does not impact his overall claim, which relates to later attempts to modify the order and the court's actions subsequent to the order's entry.

¶26 Second, B.W. contends that because S.H. cannot prove that he would have been successful in modifying the June 2014 order, his as-applied due process challenge has no merit. We also reject this argument. The due process issue here is that the circuit court prevented S.H.'s ability to be heard by the court. Whether

he would have been successful on his efforts is immaterial because S.H. is not directly challenging the underlying order. S.H.'s challenge centers on his being denied access to be heard in the first instance. B.W.'s argument is unavailing because if S.H. would have been granted such access, it cannot be known whether he would have been successful.

¶27    Finally, B.W. contends that S.H.'s due process challenge is actually a collateral attack on the June 2014 order. A collateral attack on a judgment is "an attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it." *Oneida Cnty. DSS v. Nicole W.,* 2007 WI 30, ¶27, 299 Wis. 2d 637, 728 N.W.2d 652 (citation omitted). Again, the due process challenge here does not, itself, ask the circuit court to invalidate or modify the 2014 order, and it in no way indirectly challenges or seeks to avoid that order. S.H. only argues that it was unconstitutional to terminate his rights after failing to grant him a hearing to modify the original placement arrangement. The outcome of that hearing, or its effect on the 2014 order, is not at issue in this appeal.

¶28    S.H. also argues that his access to justice was hampered by his inability to afford an attorney, although he does not argue that he was wrongfully denied an attorney. While the Sixth Amendment does not apply to civil proceedings, the right to counsel in TPR proceedings is afforded by WIS. STAT. § 48.23(2). The legislature emphasized the necessity of counsel, and "[t]he legislative edict is that, in termination proceedings, 'any parent … shall be represented by counsel.'" *M.W. v. Monroe Cnty. DHS,* 116 Wis. 2d 432, 437, 342 N.W.2d 410 (1984) (citation omitted). S.H. was, however, represented by

counsel during the termination proceedings. The requirement that S.H. be represented by counsel does not extend to every family court proceeding, and thus his inability to afford an attorney in seeking placement or during other intermediate proceedings has no direct implication on our decision, or on S.H.'s constitutional rights.

¶29 S.H.'s right to substantive due process was violated. Accordingly, we reverse the circuit court's orders terminating S.H.'s parental rights. We remand with directions that, in any further proceedings evaluating whether S.H. was unfit as a parent, the parties and the court may not use the period during which S.H. was without placement and was being denied access to the courts until he paid a fee as evidence to support a finding that S.H. was an unfit parent. The period of denial of placement may be used as a factor or explanation in support of S.H.'s position in those proceedings, but not against it.

*By the Court.*—Orders reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.