JONI B. and Richard S. Petitioners,

v.

STATE of Wisconsin, Respondent. [Case No. 95-2757-OA]

Honorable Michael MALMSTADT, Honorable Thomas P. Donegan, Honorable Christopher R. Foley, Honorable Mel Flanagan, Honorable Ronald S. Goldberger, Honorable Russell W. Stamper and Honorable Patrick T. Sheedy, Petitioners,

v.

STATE of Wisconsin, Respondent. [Case No. 95-2758-OA]

Supreme Court

*Nos. 95–2757–OA, 95–2758–OA. Oral argument May 3, 1996.—Decided June 13, 1996.*

(Also reported in 549 N.W.2d 411.)

For the petitioners there were briefs by *Lynn Adelman, Jon Deitrich* and *Adelman, Adelman & Murray, S.C.*, Milwaukee; *Paula K. Doyle* and *Law Offices of Paula K. Doyle*, Madison; *David J. Harth* and *Foley & Lardner*, Madison and oral argument by *Lynn Adelman and David J. Harth.*

For the respondent there was a brief by *Bruce L. Harms, Michael J. Modl* and *Axley Brynelson*, Madison and oral argument by *Michael J. Modl.*

Amicus curiae brief was filed by *Peter M. Koneazny*, Milwaukee for the *American Civil Liberties Union of Wisconsin Foundation, Inc.*

Amicus curiae brief was filed by *Mary Bednarik, John Ebbott*, Milwaukee for the Legal Action of Wisconsin, Inc.

Amicus curiae brief was filed by *Gary E. Sherman*, Port Wing and *John S. Skilton*, President, Milwaukee, for the State Bar of Wisconsin.

Amicus curiae brief was filed by *Patricia K. McDowell*, Milwaukee, *James A. Walrath, Julia E. Vosper* and *James M. Brennan*, Milwaukee for the Milwaukee Bar Association, Inc. and the Legal Aid Society of Milwaukee, Inc.

JANINE P. GESKE, J. The Petitioners[1] commenced this original action seeking a declaratory

---

[1] The petitioners in the *Joni B.* action are indigent parents of children subject to CHIPS proceedings. In the *Malmstadt* action, the petitioners are six Milwaukee Children's Court judges (Honorable Michael Malmstadt, Honorable Thomas P. Donegan, Honorable Christopher R. Foley, Honorable Mel Flanagan, Honorable Ronald S. Goldberger, and Honorable Russell W. Stamper) and Chief Judge of the Circuit Court for Milwaukee County, Patrick T. Sheedy. Throughout this opinion they will be referred to collectively as the Petitioners.

judgment on the constitutionality of 1995 Wis. Act 27, § 2442v. This particular section of the Act (the state budget bill) amended Wis. Stat. § 48.23(3), as indicated by the following underlined language:

> POWER OF THE COURT TO APPOINT COUNSEL. Except in proceedings under s. 48.13, at any time, upon request or on its own motion, the court may appoint counsel for the child or any party, unless the child or the party has or wishes to retain counsel of his or her own choosing. The court may not appoint counsel for any party other than the child in a proceeding under s. 48.13.

Wisconsin Stat. § 48.13 delineates the court's jurisdiction over children alleged to be in need of protection or services, commonly known as CHIPS actions.[2]

---

[2] **48.13 Jurisdiction over children alleged to be in need of protection or services.** The court has exclusive original jurisdiction over a child alleged to be in need of protection or services which can be ordered by the court, and:

**(1)** Who is without a parent or guardian;

**(2)** Who has been abandoned;

**(3)** Who has been the victim of sexual or physical abuse including injury which is self-inflicted or inflicted by another by other than accidental means;

**(3m)** Who is at substantial risk of becoming the victim of sexual or physical abuse, including injury that is self-inflicted or inflicted by another by other than accidental means, based on reliable and credible information that another child in the home has been the victim of sexual or physical abuse;

**(4)** Whose parent or guardian signs the petition requesting jurisdiction and states that he or she is unable to care for, control or provide necessary special treatment or care for the child;

**(5)** Who has been placed for care or adoption in violation of law;

**(6)** Who is habitually truant from school, after evidence is provided by the school attendance officer that the activities under s. 118.16(5) have been completed, except as provided under s. 48.17 (2);

**(6m)** Who is a school dropout, as defined in s. 118.153(1)(b);

The Petitioners claim that the amendment is unconstitutional on the grounds that it violates Wis-

(7) Who is habitually truant from home and either the child or a parent, guardian or a relative in whose home the child resides signs the petition requesting jurisdiction and attests in court that reconciliation efforts have been attempted and have failed;

(8) Who is receiving inadequate care during the period of time a parent is missing, incarcerated, hospitalized or institutionalized;

(9) Who is at least age 12, signs the petition requesting jurisdiction and attests in court that he or she is in need of special care and treatment which the parent, guardian or legal custodian is unwilling to provide;

(10) Whose parent, guardian or legal custodian neglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child;

(10m) Whose parent, guardian or legal custodian is at substantial risk of neglecting, refusing or being unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to endanger seriously the physical health of the child, based on reliable and credible information that the child's parent, guardian or legal custodian has neglected, refused or been unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to endanger seriously the physical health of another child in the home;

(11) Who is suffering emotional damage for which the parent or guardian is unwilling to provide treatment, which is evidenced by one or more of the following characteristics, exhibited to a severe degree: anxiety, depression, withdrawal or outward aggressive behavior;

(11m) Who is suffering from an alcohol and other drug abuse impairment, exhibited to a severe degree, for which the parent or guardian is unwilling to provide treatment;

(12) Who, being under 12 years of age, has committed a delinquent act as defined in s. 48.12;

(13) Who has not been immunized as required by s. 252.04 and not exempted under s. 252.04(3); or

(14) Who has been determined, under s. 48.30(5)(c), to be not responsible for a delinquent act by reason of mental disease or defect or who has been determined, under s. 48.30(5)(d), to be not competent to proceed.

consin's separation of powers doctrine and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. We must presume that a statute is constitutional. *State ex rel. Friedrich v. Dane County Circuit Court*, 192 Wis. 2d 1, 13, 531 N.W.2d 32 (1995) (citing *State v. Holmes*, 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982)). This court will strike down a legislative enactment only if the challenger proves the statute unconstitutional beyond a reasonable doubt. *Id.* We conclude that the Petitioners have met this burden on both grounds.

## FACTS

The parties do not dispute the relevant facts. On June 29, 1995, the Wisconsin legislature enacted Assembly Bill 150, which was signed into law as 1995 Wis. Act 27 on July 26, 1995. The Act included the above quoted provision, § 2442v, amending § 48.13(3) which governs proceedings to declare a child to be in need of protection and services. The amended provision bars a circuit court from appointing counsel for the parents, or any party other than the child, in CHIPS actions.[3]

On October 9, 1995, the Petitioners filed two separate petitions challenging the constitutionality of § 2442v and requesting that this court take original action pursuant to Wis. Stat. § 809.70 and Art. VII, sec. 3(2) of the Wisconsin Constitution. This court granted

---

[3] The stipulated facts also included the following information: (1) during 1994 in Milwaukee County, 988 original CHIPS petitions and 2,007 extensions were filed; and (2) during fiscal 1993-94, the Office of the State Public Defender provided counsel in 9,858 CHIPS cases, with an estimated 55% of those involving representation of a parent.

those petitions on November 14, 1995, and simultaneously ordered that they be consolidated.

## SEPARATION OF POWERS

The Petitioners first argue that the legislature's imposition of a complete non-discretionary bar to appointment of counsel in CHIPS cases violates Wisconsin's separation of powers doctrine by impermissibly intruding upon the judiciary's power to appoint counsel. We agree.

Although the separation of powers doctrine is not explicitly expressed in our state constitution, we have previously recognized that it is implicit in that document's language dividing governmental powers among the executive, legislative and judicial branches.[4] *Holmes*, 106 Wis. 2d at 42. Under the doctrine, each branch is prohibited from intruding upon another's "core zone of exclusive authority."[5] *Friedrich*, 192 Wis. 2d at 13. Further, even in an area where the authority of the legislature and judiciary is shared or overlaps, "[t]he legislature is prohibited from unreasonably burdening or substantially interfering with the judicial branch." *State ex rel. Fiedler v. Wisconsin Senate*, 155 Wis. 2d 94, 100, 454 N.W.2d 770 (1990).

---

[4] *See* Wisconsin Constitution: Art. V, sec. 1 (executive); Art. IV, sec. 1 (legislative); and Art. VII, secs. 2, 3 and 4 (judicial).

[5] This court has previously commented that although such an intrusion is prohibited, "[i]f a statute falls within the judiciary's core zone of exclusive authority, the court may abide by the statute if it furthers the administration of justice, 'as a matter of comity or courtesy rather than as an acknowledgement of power.'" *Friedrich*, 192 Wis. 2d at 15. Compliance, however, is at the discretion of the judiciary and cannot be mandated.

8

In *Friedrich,* this court outlined the procedure for determining whether a legislative enactment improperly infringes on the judiciary. *Friedrich,* 192 Wis. 2d at 14-15. First, we look to whether the constitution grants the legislature subject matter jurisdiction over the area encompassed by the challenged statute. Section 2442v was passed within the context of the state budget bill. Although the amended statute makes no mention of compensation for counsel, the Respondent reasonably argues that the legislative intent behind the amendment was to conserve public funds by prohibiting their use for the appointment of counsel for parents in CHIPS actions. Since the legislature possesses the power to budget the state's finances, this provision could arguably fall under the previously recognized legislative power "to allocate government resources." *Id.* at 16.

■

Next, the reviewing court examines whether the "subject matter of the statute also falls within the judiciary's constitutional grant of power." *Id.* at 14-15. This court has repeatedly found that the judiciary's power to appoint counsel is inherent:

> the appointment of counsel ought to be made by a judge or under the aegis of the judicial system. Attorneys are officers of the court and the duty to furnish representation derives from constitutional provisions that place the responsibility upon courts. That responsibility has been traditionally discharged by courts. It is within the inherent power of the courts to appoint counsel for the representation of indigents.

*State ex rel. Fitas v. Milwaukee County,* 65 Wis. 2d 130, 134, 221 N.W.2d 902 (1974). *See also State ex rel. Chiarkas v. Skow,* 160 Wis. 2d 123, 137, 465 N.W.2d

625 (1991); *Contempt in State v. Lehman*, 137 Wis. 2d 65, 76, 403 N.W.2d 438 (1987).

Although the Respondent concedes that the judiciary has the inherent authority to appoint counsel, the parties disagree as to whether that power is exclusive to the judiciary or is shared with the legislature. We have previously commented that,

> the constitution does not define legislative, executive or judicial power and that it is neither possible nor practicable "to classify accurately all the various governmental powers and to say that this power belongs exclusively to one department and that power belongs exclusively to another."

*Holmes*, 106 Wis. 2d at 42-43 (quoting *Integration of Bar Case*, 244 Wis. 8, 45, 11 N.W.2d 604 (1943)).

In this case, we need not decide whether the power to appoint counsel is exclusive to the judiciary or shared with the legislature, since the level of intrusion here is impermissible under either scenario. Any intrusion is prohibited if the judicial authority is exclusive, and even if the power is viewed as shared, the legislature may not place an unreasonable burden on or substantially interfere with the judiciary's exercise of that power. The amended statute's flat prohibition on appointment of counsel for anyone other than the child in CHIPS proceedings clearly intrudes upon the authority of the judiciary, as well as unreasonably burdens and substantially interferes with the judicial branch's inherent power to appoint counsel in order to effect the efficient administration of justice.

A court's inherent power to appoint counsel is not derived from an individual litigant's constitutional right to counsel, "but rather is inherent to serve the interests of the circuit court." *Chiarkas*, 160 Wis. 2d at 137-38 (citing *Lehman*, 137 Wis. 2d at 76). In rare cases

a court may find a compelling judicial need for appointment of an attorney for a party even though that party may have neither a constitutional nor a statutory right to counsel. A court may use its inherent discretionary authority to appoint counsel in furtherance of the court's need for the orderly and fair presentation of a case.

In CHIPS proceedings, courts sometimes face very special problems with unrepresented parents. These parents are often poorly educated, frightened and unable to fully understand and participate in the judicial process, thus sometimes creating exceptional problems for the trial court. When a parent obviously needs assistance of counsel to ensure the integrity of the CHIPS proceeding, the court cannot be legislatively denied the right to appoint counsel, thereby placing the individual judge in the untenable position of having to essentially serve as counsel for that parent.[6]

■

By definition, the complete elimination of the court's power to appoint counsel even in situations where it finds appointment necessary in the interests of the court is an unreasonable burden and a substantial interference with the judicial branch's authority. We hold that the amended statute impermissibly interferes with an inherent authority of the judiciary and, therefore, is violative of the separation of powers doctrine embodied in our state constitution.

---

[6] The potential for complexity, both substantive and procedural, in CHIPS proceedings is further developed in the due process discussion that follows.

## DUE PROCESS

The Petitioners next argue that the amended statute violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Although parents do not have a constitutionally protected right to counsel in all child protective hearings, the Petitioners contend that due process may require it in particular instances. Therefore, the circuit court must have the ability to make an individualized determination as to whether the facts of the case before it necessitates the appointment of counsel. Again, we agree with the Petitioners.

Our due process inquiry centers on the issue of fundamental fairness because, as we have previously stated, "[t]he Fourteenth Amendment bars a state from denying any person a fundamentally fair trial." *Piper v. Popp*, 167 Wis. 2d 633, 650, 482 N.W.2d 353 (1992). Both parties direct our attention to *Lassiter v. Department of Social Services*, 452 U.S. 18, 24 (1981), in which the United States Supreme Court confronted a claim by an indigent parent that her right to due process had been violated because she was not afforded the assistance of counsel in proceedings to terminate her parental rights. The Court examined its own precedents on fundamental fairness and drew "the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Id.* at 26-27. Because Ms. Lassiter's physical liberty was not at stake, she did not have a constitutionally guaranteed right to counsel. However, the Court's analysis did not end there. Rather, it concluded that trial courts must determine on a case-by-case basis whether due process necessitates appointment of counsel. *Id.* at 26, 32.

The *Lassiter* Court devised a test, adopted by this court in *Piper*, 167 Wis. 2d at 647, to determine whether due process requires that counsel must be appointed in a given situation.[7] First, a court must balance the following elements of due process against each other: the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. *Piper*, 167 Wis. 2d at 647 (citing *Lassiter*, 452 U.S. at 27). The "net weight" of these elements is then balanced against the presumption that a right to counsel exists only when personal freedom is jeopardized. *Id.*

The United States Supreme Court has consistently characterized a parent's interest in the "companionship, care, custody, and management of his or her children" as an important one that "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). The Court recognized that the right to raise one's children is "essential" and has invoked the Due Process Clause, as well as the Equal Protection Clause and the Ninth Amendment, in defense of the integrity of the family unit. *Id.* (citing *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942); and *Griswold v. Connecticut*, 381 U.S. 479, 496 (1965)). The *Lassiter* Court asserted that par-

---

[7] In *Piper*, we held that, although the incarcerated indigent defendant in a civil tort action had no constitutional right to appointed counsel, due process required that he be given a "meaningful opportunity to be heard." *Piper*, 167 Wis. 2d at 658. In each case, the circuit court must determine what constitutes a meaningful opportunity to be heard and whether that requires appointment of counsel in the particular instance. *Id.* at 659.

ents have a particularly "commanding" interest in the "accuracy and justice" of proceedings that could end the parent-child relationship. *Lassiter*, 452 U.S. at 27.

The Respondent argues that the same interests and, therefore, the same due process concerns are not at stake here because the proceedings in *Lassiter* involved permanent severance of parental rights, whereas CHIPS proceedings represent only a "minimal" or "relatively minor interference" with the parent-child relationship. On the contrary, the interests of a parent that may be affected by a CHIPS hearing are far from "minimal." One of the dispositional options available to the court upon a finding that a child is in need of protection or services is removal of the child from the parental home. *See* Wis. Stat. §§ 48.34(3), 48.345(1). Even though placement in foster care is ideally short-term, the reality is that many children remain out of their homes for extended periods of time.[8] Further, a parent's failure to make substantial progress towards meeting the conditions established pursuant to a CHIPS finding for the child's return to the home, is

---

[8] In 1993 there were 9,608 Wisconsin children who, although not delinquent, were in out-of-home placement, with 35.7% of this number from Milwaukee County. Gerald A. Born and Linda Hisgen, *Presentation to the Joint Legislative Council's Special Committee on Children in Need of Protection or Services*, p.4, September 7, 1994. According to the Milwaukee County Department of Human Services, approximately one-half of the children placed in foster care remain there for more than two years and 35% live out of the familial home in excess of three years. Anne Bothwell, *Study Shows Systemic Problems in County's Services for Children*, Milwaukee Journal, March 13, 1995.

14

itself one of the bases for later termination of parental rights. *See* Wis. Stat. § 48.415(2).

Additionally, some parents may find themselves in a position where interests other than that of family integrity are in need of protection.[9] If the CHIPS action was initiated on the basis of allegations of neglect or abuse, as is commonly the case, the parent may also be facing criminal prosecution. Once freedom of liberty is implicated, numerous additional due process concerns arise. True, the statutory procedures provide that parents be informed of certain rights, including the right to a jury trial, to remain silent, and to summon and cross-examine witnesses. In some cases, the value of such warnings alone may be questionable without the guidance of legal counsel to assist in the interpretation of their import in the current and potential ancillary proceedings.

The State shares a parent's interest in a just and accurate outcome where the welfare of a child is concerned. *Lassiter*, 452 U.S. at 27. The United States Supreme Court has noted that this interest might be best served in an adversary setting where both the State and the parents are represented by counsel because "just results are most likely to be obtained through the equal contest of opposed interests." *Id.* at 28. Further, the Court in *Lassiter* found that although the State's pecuniary interest (in striving to economize proceeding expenses by not appointing counsel) was legitimate, "it is hardly significant enough to overcome private interests as important as those here." *Id.*

---

[9] "Petitions to terminate parental rights are not uncommonly based on alleged criminal activity. Parents so accused may need legal counsel to guide them in understanding the problems such petitions may create." *Lassiter v. Department of Social Services*, 452 U.S. 18, 27 n.3 (1981).

We recognize that the legislature has a legitimate interest in its efforts to manage public funds responsibly. However, we conclude that, in some cases, the State's pecuniary interests will not outweigh the interest shared by the State and the parent in a just and accurate result which will require the "equal contest" of counseled adversary proceedings. It would be in no one's best interest, least of all the child's, if the finality of an adoption were later challenged on the basis of a constitutionally flawed prior CHIPS or termination proceeding.

Finally, in assessing the risk of an erroneous outcome, we find that CHIPS proceedings can pose many of the same hazards which the *Lassiter* Court noted may occur in termination proceedings. Parents involved are "likely to be people with little education, who have had uncommon difficulty in dealing with life, and who are, at the hearing, thrust into a distressing and disorienting situation." *Lassiter*, 452 U.S. at 30. They may be confronted with medical and psychiatric testimony which few people are "equipped to understand and fewer still to confute, . . ." *Id.* The issues may be complex and the testimony laced with hearsay and evidentiary pitfalls, escalating the risks of erroneous deprivation.[10]

---

[10] In *Lassiter*, after noting that these difficulties might "overwhelm the uncounseled parent," the Supreme Court noted that state courts have generally found that counsel must be appointed for parents at termination proceedings and that a number of courts have extended this coverage to parents facing dependency or neglect hearings (the equivalent of CHIPS proceedings). *Lassiter*, 452 U.S. at 30 & n.6. Although the Court found that fundamental fairness under the Fourteenth Amendment did not require the appointment of counsel in every termination proceeding, it stated that:

During oral argument this court presented the Respondent with the following hypothetical scenario:

> A woman is severely developmentally disabled, with a borderline IQ, but manages to live independently, gainfully employed as a waitress. She gives birth to twins and lovingly raises them, providing for all of their necessities. But as the boys grow older they mentally outstrip their mother; she does not have the capacity to help them with their homework, and they soon find ways they can "outfox" her. There has been no abuse or neglect but the county decides that it is too expensive to continue to provide in-home services to assist the family, so they file a CHIPS action requesting that the boys be placed in foster care.
>
> The mother desperately wants to keep her two children whom she intensely loves, so she contests the CHIPS petition. Under amended § 48.23(3), the court is prohibited from appointing counsel to assist the mother, and a date for a jury trial is set where the mother must appear alone to argue that she should be allowed to keep her family intact.

The court then posed three questions: (1) how would the mother conduct voir dire? (2) how would she cross-examine the psychiatrist who was brought in as an expert witness against her? and, (3) how could such a proceeding possibly be fundamentally fair?

---

A wise public policy, however, may require that higher standards be adopted than those minimally tolerable under the Constitution. Informed opinion has clearly come to hold that an indigent parent is entitled to the assistance of appointed counsel not only in parental termination proceedings, but in dependency and neglect proceedings as well.

*Lassiter*, 452 U.S. at 33-34.

17

We conclude that fundamental fairness requires that a circuit judge be given the discretion to make the determination of what due process requires on a case-by-case basis. The precedent is clear. Both the United States Supreme Court in *Lassiter* and this court in *Piper* found that there is no absolute right to the appointment of counsel in civil cases carrying no threat of loss of physical freedom. Nevertheless, we, as well as the United States Supreme Court, have concluded that due process requires an individualized determination of the necessity for appointment under the circumstances presented by the particular case. *See Lassiter*, 452 U.S. at 31-32; *Piper*, 167 Wis. 2d at 646. As amended, Wis. Stat. § 48.23(3) does not afford such an opportunity for assessment. Therefore, we hold that it violates the Due Process Clause of the Fourteenth Amendment.

## CONCLUSION

We emphasize that the key to an individualized determination is that the need to appoint counsel will differ from case to case. In other words, a circuit court should only appoint counsel after concluding that either the efficient administration of justice warrants it or that due process considerations outweigh the presumption against such an appointment. If the parent does not request appointment of counsel and the court perceives no particularized need for counsel in the case before it, the court need not address the issue. We do suggest, however, that when the court either grants or denies a request for counsel it should memorialize its findings and rationale on the record to facilitate appellate review. *See Friedrich*, 192 Wis. 2d at 34.

In conducting the balancing called for in *Lassiter* and *Piper*, we recommend that a court examine not only the due process factors (the private interests, governmental interests, and the risk of erroneous decisions), but also consider the following:

— the personal characteristics of the parent, such as age, mental capacity, education, and former contact with the court;

— the parent's demonstrated level of interest in the proceedings and desire to participate;

— whether the petition alleges incidents of abuse or neglect which could lead to criminal prosecution;

— the complexity of the case, including the likelihood of the introduction of medical or psychological evidence;

— the probability of out-of-home placement and potential duration of separation, based on the allegations in the petition and the social worker's recommendation.

These are only suggestions, not a checklist etched in stone. We do not believe it is necessary or advisable to impose inflexible limitations on our able state judges in the exercise of their inherent discretionary power to appoint counsel or in regard to their analysis of due process considerations.

For the reasons stated above, we conclude that Wis. Stat. § 48.23(3), as amended by 1995 Wis. Act 27, § 2442v, violates both the Wisconsin doctrine of separation of powers and the Due Process Clause of the United States Constitution. Therefore, we grant the Petitioners' request for relief and declare the amendment contained in 1995 Wis. Act 27, § 2442v, void.

19

*By the Court.*—Rights declared and relief granted.