**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 14, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP2190**

**STATE OF WISCONSIN**

Cir. Ct. No.  2014JC34

**IN COURT OF APPEALS
DISTRICT IV**

IN THE INTEREST OF K.L.M., A PERSON UNDER THE AGE OF 18:

RICHLAND COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

D.M.K.,

   RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Richland County: LISA A. McDOUGAL, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

¶1 GRAHAM, J.[1] D.M.K. is the mother of the child who was determined to be in need of protection and services in this CHIPS proceeding. She appeals a circuit court order that terminated the appointment of adversary counsel to represent her in the proceeding, and that ordered payment of attorney fees in an amount that was less than counsel requested for work performed between October 2021 and November 2022. I conclude that the court did not err when it terminated counsel's appointment, but that the court did err with respect to counsel's fee request. I therefore affirm the portion of the order that terminated the appointment; I reverse the portion of the order that addressed the payment of counsel's fees; and I remand for additional proceedings to address the amount of fees that adversary counsel is entitled to for work performed between October 2021 and November 2022.

## BACKGROUND

¶2 D.M.K. is the mother of K.L.M. K.L.M. has severe autism, and both of his parents have mild cognitive disabilities.

¶3 In 2014, when K.L.M. was eight years old, Richland County Health and Human Services (the "Department") commenced the CHIPS proceeding, alleging that K.L.M.'s parents were unable to provide for his needs. In addition to appointing a guardian ad litem to represent K.L.M.'s interests, the circuit court, the Honorable Andrew Sharp presiding, appointed two attorneys as "adversary counsel" to represent K.L.M.'s parents. *See State v. Tammy L.D.*, 2000 WI App 200, ¶24, 238 Wis. 2d 516, 617 N.W.2d 894 ("[T]he juvenile courts of this state

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

have the discretionary authority on a case-by-case basis to appoint counsel for a parent in a CHIPS case."); ***Joni B. v. State***, 202 Wis. 2d 1, 549 N.W.2d 411 (1996) (same). Since 2014, the attorney fees for K.L.M.'s guardian ad litem and the court-appointed adversary counsel representing his parents have been borne by Richland County. *See* ***State v. Dean***, 163 Wis. 2d 503, 515-16, 471 N.W.2d 310 (Ct. App. 1991) (when the court appoints counsel other than a state public defender, the county bears counsel's costs).

¶4 K.L.M. was found in need of protection or services in 2015, and he has primarily been in institutional placement since then. There have been ongoing disputes about custody and placement and whether K.L.M. has been receiving proper care.

¶5 In 2019, the court-appointed adversary counsel who had been representing D.M.K. withdrew from the case, and Attorney Theresa Anne Carey was appointed as adversary counsel. Like the other attorneys appointed to work on this case, Carey regularly submitted petitions requesting payment of attorney fees and costs, and the circuit court routinely issued orders directing Richland County to pay her bills.

¶6 Judge Sharp retired in 2022, and in June, Reserve Judge Jennifer Day presided over the circuit court hearing to address a permanency plan for K.L.M. During the hearing, the circuit court mentioned that it would soon be time to consider options for guardianship and placement for the following year, when K.L.M. would turn 18. At one point during the hearing, the court questioned whether K.L.M.'s parents should continue to be represented by court-appointed adversary counsel. The court raised concerns about the expense to the county and noted, among other things, that there was "really no threat of termination of

parental rights" under the circumstances. The attorney representing the Department argued that, to the extent that "the reason for retaining counsel for the parents is to look out for [K.L.M.'s interests], … that's the guardian ad litem's role," and that the existing guardian ad litem had been very proactive.

¶7 After a discussion with the parties, the circuit court terminated the appointment of adversary counsel for K.L.M.'s father, but kept Attorney Carey's appointment to represent D.M.K. in place. The court stated that "there aren't really the strong identified reasons for the county to provide counsel for [D.M.K.] under *Joni B.*, [202 Wis. 2d 1] or *Tammy L.D.*, [238 Wis. 2d 516]." However, the court reasoned that Carey had played an important role in maintaining the bond between mother and child and, "perhaps, [counsel] is necessary just to ensure that there is that minimal regular reoccurring contact." The court stated: "I'm not going to dismiss you[, Attorney Carey]. But I do need you to temper, and be cognizant of your obligations as legal counsel for [D.M.K.], as opposed to being a sounding board for [D.M.K.]."

¶8 In August 2022, following the permanency hearing, there were two events that are pertinent to the issues on appeal. First, Attorney Carey filed a petition for payment of a total of $14,681.24 in adversary counsel fees and costs, along with a spreadsheet identifying the date, activity, time, and amount of legal services performed between October 2021 and June 2022. Second, following Judge Sharp's retirement, the incoming circuit court judge, the Honorable Lisa McDougal, was assigned to the case.

¶9 Shortly thereafter, the circuit court scheduled a hearing to "address [the] status of the case and attorney fees." Attorney Carey responded by submitting a letter to the court stating that, to her knowledge, there had been no

dispute as to the amount of work she had performed on the case, and expressing concerns about the delay in payment.

¶10 During the scheduled hearing on November 7, 2022, the circuit court indicated that it had decided to terminate Attorney Carey's appointment. As discussed in detail below, the court pointed to the number of attorneys that had been involved in the CHIPS proceeding and the extent of the expenses that had been borne by the county to date. The court indicated that, although it did not question Judge Sharp's decision to appoint counsel to represent the parents at an earlier stage of the proceeding, the court could no longer justify the expense given that reunification was no longer a goal of the proceeding, the current guardian ad litem had taken a "collaborative approach" and was working well with the parents, and K.L.M. was nearing adulthood. The court also indicated that "some of [Carey's] billing has been excessive." After terminating Carey's appointment, the court directed the guardian ad litem to continue to represent K.L.M.'s best interests, and to work directly with both of K.L.M.'s parents.

¶11 Attorney Carey did not specifically object to the circuit court's decision to terminate her appointment, nor did she argue that the court was required to make any particular findings before making its decision. Instead, Carey indicated that, notwithstanding the termination of her appointment, she would continue to represent D.M.K. on a pro bono basis. For her part, D.M.K. expressed her gratitude and appreciation for the legal services and support that Carey had provided, and said that she did not "want that [support] ripped from [her]." D.M.K. said that it "would be really great … if [Carey] could stay with me." In response, the court stated that, although it could not justify continuing the appointment at county expense, Carey had expressed an intention to continue representing D.M.K. on a pro bono basis.

5

¶12     Following the hearing, Attorney Carey filed a second petition for payment of adversary counsel fees, which requested an additional $6,452.24 in fees and costs, and a spreadsheet identifying the date, activity, time, and amount of legal services from July through November 2022.  Along with the second fee petition, Carey filed a letter that provided some additional information about the services that she had provided starting in October 2021, which were included in the first fee petition.

¶13     On November 15, 2022, the circuit court issued the order that terminated Attorney Carey's appointment.  The order also directed Richland County to pay Carey $13,948.10, which was $7,185.38 less than the total of $21,133.48 that Carey had requested in the petitions.  As discussed in greater detail below, the court stated that it had reduced the amount of the payment because the requested amount was "excessive" and included "fees generated for work that lay beyond the scope of the attorney's appointment."  D.M.K., who continued to be represented by Attorney Carey on a pro bono basis, appealed the November 15, 2022 order.[2]

---

[2] This appeal was placed on hold pending another appeal by D.M.K. from the circuit court's denial of D.M.K.'s petition for waiver of fees and costs associated with this appeal. *Richland County HHS v. D.M.K.*, No. 2023AP454, unpublished op. and order (WI App Feb. 8, 2024).  Briefing ensued upon disposition of that appeal.

Separately, the court-appointed guardian ad litem filed a letter with the clerk of the court of appeals that requested guidance on her involvement in this appeal, and asserted that she does not believe that "there is a 'best interest of the child' issue before the [c]ourt."  I appreciate receiving this letter, which I construe as consistent with the guardian ad litem obligations described in *Marotz v. Marotz*, 80 Wis. 2d 477, 488, 259 N.W.2d 524 (1977).

## DISCUSSION

¶14    On appeal, D.M.K. challenges the circuit court's decision to terminate Attorney Carey's appointment, and its decision to reduce Carey's fees. For reasons I now explain, I conclude that the court did not err when it terminated Carey's appointment, but that it erred in the process of reducing Carey's fees.

### I. Termination of Appointment

¶15    D.M.K. acknowledges that she did not have a constitutional or statutory right to counsel in this CHIPS proceeding, and that it was within the circuit court's discretion to terminate Attorney Carey's appointment as adversary counsel.    However, according to D.M.K., the circuit court "did not exercise discretion in the manner contemplated by the supreme court in *Joni B.*," 202 Wis. 2d 1, and *Tammy L.D.*, 238 Wis. 2d 516.

¶16    Portions of D.M.K.'s argument on this topic are inconsistent with the applicable standard of review.  For example, D.M.K. asserts:  "Judge Sharp and Judge Day, both familiar with the case, properly determined that due process required continuing appointment of court-appointed counsel."  To the extent that D.M.K. means to argue that the only determination that Judge McDougal could reasonably have made was to continue Attorney Carey's appointment—either because due process required it or because other judges exercised their discretionary authority in favor of an appointment—I disagree.  D.M.K. does not cite any legal authority to support the proposition that the termination of counsel's appointment violates due process under these facts, and the fact that other judges exercised their discretion in favor of the appointment does not make this judge's decision to terminate the appointment erroneous.  *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981) ("It is recognized that a [circuit] court in an

exercise of discretion may reasonably reach a conclusion which another judge or another court may not reach.").

¶17 At other times, D.M.K. argues that the circuit court erroneously exercised its discretion because it failed to make findings under *Joni B.*, which directs the court to "memorialize its findings and rationale on the record to facilitate appellate review." *Joni B.*, 202 Wis. 2d at 18. This argument fails for reasons I now explain.

¶18 First, D.M.K. has arguably forfeited the argument that the circuit court was required to make any particular findings because she did not raise that argument in the circuit court. *Shadley v. Lloyds of London*, 2009 WI App 165, ¶25, 322 Wis. 2d 189, 776 N.W.2d 838 (under the forfeiture rule, "issues not presented to the [circuit] court will not be considered for the first time at the appellate level"). The forfeiture rule enables a court "to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (footnote omitted).[3] There may be good reasons to apply the forfeiture rule in a situation like this—had D.M.K. raised her argument that particular findings were required during the circuit court proceeding, the court could have addressed that argument and might have made the findings that D.M.K. now asserts were required, potentially eliminating the need for this appeal.

---

[3] The forfeiture rule also "gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection," "encourages attorneys to diligently prepare for and conduct trials," and "prevents attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (footnote omitted).

¶19    Even so, D.M.K. asks me to overlook the forfeiture rule because the circuit court did not give prior notice that it was considering terminating Attorney Carey's appointment, and Carey was "taken off guard" during the hearing. Even if I were to overlook the forfeiture rule on that basis, I would reject D.M.K.'s argument based on the applicable case law and the record that the court made in this case.

¶20    In ***Joni B.***, the court emphasized that a decision regarding the appointment of adversary counsel should be "individualized" and "will differ from case to case." ***Joni B.***, 202 Wis. 2d at 18. The ***Joni B.*** court stated that "a circuit court should only appoint [adversary] counsel after concluding that either the efficient administration of justice warrants it or that due process considerations outweigh the presumption against such an appointment." ***Id.***; *see also* ***Tammy L.D.***, 238 Wis. 2d 516, ¶¶17-22 (discussing ***Joni B.***).

¶21    Although D.M.K. asserts that the court failed to "memorialize its findings and rationale on the record," the transcript of the hearing tells a different story. The court thoroughly and thoughtfully explained its reasons for terminating Attorney Carey's appointment as follows:

> As I was getting up to speed in this case, … I was given submissions of attorney bills. I had to take a little step back, and look at what this case was costing the County.
>
> It is not an inexpensive matter.…
>
> And certainly, there're a lot of attorneys involved. There have been attorneys for [K.L.M.] this whole time as is appropriate. There's a Guardian ad Litem. And then, there have been attorney[s] for each of the parents at various points. And of course, the attorney for the County.
>
> The attorney fees that have been submitted … since 2014, in this case, across the board for all the attorneys, has

amounted to more than $71,000. This is County money. This is tax-payer money. And while the Guardian ad Litem is a mandated attorney, in []other words, is a required attorney, the attorney for the parents has not been a required attorney. A required appointment.

I know that Attorney Carey has sent a letter enquiring as to why the Court has not approved her bill. And it's because the Court has wanted to take some time to really think about … the appointment of an attorney for [D.M.K.]. And the appropriateness of that at this time. That led me back, of course, to the *Joni B.* case and the *Tammy L.D.* case, which is the law surrounding the appointment for attorneys in cases, and for individuals where there is not either a constitutional or statutory right to have an attorney.

So … [c]ourts, of course, have inherent powers to appoint attorneys in cases where it's needed. But that power is not derived from the litigant's constitutional right to have counsel, but is inherent to serve the interest of the Circuit Court.

Certainly, sometimes circumstances call for … an appointment [of] an attorney in … this type of case. When there is a need for a fair and orderly presentation of the case. *Joni B.* also addresses issues of due process and fundamental fairness.

I am certainly not second guessing … Judge Sharp's determination when he appointed attorney[s] for the parents. I think that there was a time in the lifecycle of this case where that was no doubt very needed. I know that the parents were very frustrated. That they had a lot of questions. A lot of those questions were falling to Court staff, and the appointment of attorney[s] seemed to help. And certainly, did serve the interest of the Circuit Court.

The parents in this case are people who have very few resources, and have a lot of life challenges. And because of that, it was appropriate for the Court to assign an attorney.

We fast-forward to today, now. And things have shifted in this case quite a bit. Reunification is no longer a goal. There is no possibility that [K.L.M.] is going to come back home to live with [D.M.K.]. We are quickly rounding the bend to [K.L.M.]'s adulthood. And I am very glad that we have a Guardian ad Litem on board, now who

10

understands the process, is on board with the process, and enjoys the endorsement of all the parties here….

I know that [the guardian ad litem] take[s] a collaborative approach to her work. She has certainly demonstrated an ability to work well with different players and stakeholders in a situation like that, and do well while still advancing the interest of her client. I know that she will, certainly, continue to take an interest in the issues that have been raised here today .... And of course, she herself is looking into issues of whether or not [K.L.M.] can be placed at [a state-run facility that helps children with disabilities develop independent living skills]. And everybody seems very enthusiastic with regard to that.

I know it's not what [D.M.K.] wants to hear here, but I -- at this juncture can no longer justify the cost to the County to have a court-appointed attorney for [D.M.K.]. In reviewing Attorney Carey's billings, I have some big questions as to some of the nature of the work that's been done. And I do find that some of the billing has been excessive.

I know that the response to that will be that Attorney Carey has done a lot of the heavy lifting here. And that that's been done by the agreement of the parties. I don't question[] that. There are some things that I question, bottom line is that the Court cannot justify continuing this appointment given the extreme fiscal crisis that this county is in. Given the excessive -- well not excessive, with the very high total of attorney billings in this case overall. And -- I'll just leave it at that.

¶22 Based on the transcript, it is apparent that the circuit court considered the facts it found relevant, which included but were not limited to the expense to the county. Contrary to D.M.K.'s assertions, the expense to the county was an appropriate consideration. *Tammy L.D.*, 238 Wis. 2d 516, ¶21 ("While acknowledging the legitimacy of the State's pecuniary interests in not appointing counsel, *Joni B.* nevertheless concluded that in some cases, such an interest would not outweigh the shared interest 'in a just and accurate result which will require

the "equal contest" of counseled adversary proceedings.'" (citations omitted)).[4] The court also considered that, although it may have been appropriate to appoint counsel for D.M.K. at an earlier stage in the CHIPS proceeding, the situation had changed such that D.M.K.'s interests were aligned with the interests represented by the guardian ad litem, who was able to work collaboratively with both parents. Under the circumstances, I conclude that the circuit court properly exercised its discretion consistent with *Joni B.* and *Tammy L.D.*

## II. Attorney Fee Reduction

¶23 I now turn to D.M.K.'s challenge to the circuit court's decision to order the county to pay a reduced portion of the fees that Attorney Carey billed between October 2021 and December 2022. According to D.M.K., there is no dispute that Carey performed the work that is itemized in her billing spreadsheets. The issue turns on the extent of the court's authority to modify or disallow fees itemized in Carey's bill and to direct the county to pay a reduced amount of fees.

¶24 Our supreme court has addressed a circuit court's authority with respect to fees for legal services performed by court-appointed attorneys. *See State v. DeKeyser*, 29 Wis. 2d 132, 138 N.W.2d 129 (1965); *State v. Sidney*, 66 Wis. 2d 602, 225 N.W.2d 438 (1975). Those cases generally recognize that a circuit court has a role in overseeing the payment of such fees—specifically, the court has "the duty of not only determining what services were reasonably necessary to constitute … adequate [representation] but also what money value

---

[4] D.M.K. also asserts that the circuit court erroneously assumed that Attorney Carey would continue representing her pro bono, and that assumption played into the court's decision to terminate her appointment. I address that assertion no further because it finds no support in the record.

was to be placed upon the services so rendered." *DeKeyser*, 29 Wis. 2d at 138 (citing *Conway v. Sauk County*, 19 Wis. 2d 599, 120 N.W.2d 671 (1963)). Those cases also recognize that a court can modify or disallow items in a fee request based on its determination of "the extent, necessity or details of the services," among other things. *Id.* at 135.

¶25 The *DeKeyser* court provided the following guidance on the process that should be followed in such circumstances:

> Claims for legal services should be submitted to the court by verified petition explaining the nature and extent of the work and in itemized form showing not only the amount of time spent but also the nature of the work and the problems involved in sufficient detail so that it can be properly appraised and a reasonable fee determined for the services. The facts so stated should be considered prima facie evidence, and modifications, allowances, and disallowances for the items made by the court and the reasons therefor should be set forth in writing and an opportunity given to counsel to contest the modifications. Reasonable [persons] may differ over the value of legal services and there is no question of an attorney's integrity involved when the court differs with [the attorney] as to the necessity or value of services rendered. Such procedure we hope will minimize misunderstanding between counsel and the trial court and reduce the number of appeals to this court.

*Id.* at 137 (emphasis omitted). Based on this passage, it is evident that a circuit court can, within its exercise of discretion, order the payment of something less than the full amount of fees claimed by a court-appointed attorney, assuming that the court allows the attorney to develop a record and provides reasons for any modifications that are consistent with law and supported by the record.

¶26 D.M.K. does not appear to question that the circuit court had authority to consider the necessity and value of the services that Attorney Carey

13

provided.[5] Instead, she argues that the court made several errors in the course of evaluating and reducing Carey's fees. More specifically, D.M.K. argues that the court erred: by failing to identify any fee items that it was modifying or disallowing; by failing to provide an explanation for any modifications or disallowances; by failing to give Carey "a formal opportunity to challenge the … reduction"; and by considering the county's "budget and finances" when evaluating the request. D.M.K. also contends that the reasons the court provided for the reduction are not supported by the record. Although I do not agree that the court erred in every way that is identified in D.M.K.'s brief, I conclude that the process the court used to evaluate the fee request was inconsistent with the applicable case law and that the reasons the court gave for reducing the amount of fees it ordered are not adequately supported by the record.

¶27 I begin by addressing the process that was used during the circuit court proceeding. When it reduced the amount of Attorney Carey's fees, the court did not identify any specific entries on the billing spreadsheets that it was modifying or disallowing. *See DeKeyser*, 29 Wis. 2d at 137 ("[M]odifications, allowances, and disallowances of the items made by the court…should be set forth in writing."). Instead, it simply reduced the total amount based on its

---

[5] At most, D.M.K. contends that Judge McDougal was not in as good of a position to evaluate the necessity of the fees as the judges who had previously presided over the CHIPS proceeding because Judge McDougal had recently been assigned to the case and was not personally familiar with the work that had been performed. However, it is undisputed that, based on the timing of Attorney Carey's fee petitions, it fell to Judge McDougal to exercise her discretion about the requested fees.

D.M.K. also cites to SCR 81.01 and SCR 81.02, which require a circuit court to "fix the amount [of an appointed attorney's] compensation" and set a minimum rate. These rules do not undermine the court's responsibility to "determin[e] what services were reasonably necessary to constitute … adequate [representation] [and] what money value was to be placed upon the services so rendered." *State v. DeKeyser*, 29 Wis. 2d 132, 138, 138 N.W.2d 129 (1965).

determination that the fees requested were excessive and unreasonable. The order provided:

> IT IS ORDERED THAT Attorney Theresa Carey, adversary counsel for the mother, shall be awarded attorney's fees and costs in the amount of $13,948.10 for legal services and disbursements in said action.
>
> The court finds the attorney fees requested in the amount of $21,133.48 for the period of 10/1/21 to 11/7/22 in this case to be excessive and unnecessary, along with some fees generated for work that lay beyond the scope of the attorney's appointment, and are therefore unreasonable.

Thus, contrary to *DeKeyser*, the court did not explain which entries it was modifying or disallowing.

¶28 At the same time, I acknowledge that Attorney Carey's fee petitions and billing spreadsheets did not adequately "explain[] the nature and extent of the work" she performed. *See Dekeyser*, 29 Wis. 2d at 137 For example, in the spreadsheet that was submitted along with the first fee petition, dozens of entries are described simply as "Telephone call client," without any additional detail about the subject of the phone calls or the context in which they were made. It is arguable that the billing spreadsheets are not sufficiently detailed to constitute prima facie evidence under the process set forth in *DeKeyser*, and the lack of detail undoubtedly frustrated the circuit court's review of the necessity and value of the legal services that she had provided. However, that does not mean that the circuit court could simply "eyeball" the fee request and "cut it down by an arbitrary percentage because it seemed excessive to the court." *Johnson v. Roma II-Waterford LLC*, 2013 WI App 38, ¶26, 346 Wis. 2d 612, 829 N.W.2d 538 (citation omitted) (addressing a fee award in a different context). Instead, following *DeKeyser*, the court should have identified "modifications, allowances,

15

and disallowances … and the reasons therefor," and Carey should have been given an opportunity to contest any modifications. *DeKeyser*, 29 Wis. 2d at 137.

¶29 I now turn to the reasons the circuit court gave for reducing the total amount of Attorney Carey's fees. As mentioned, the court provided two reasons for the reduction: it found that the fees were "excessive and unnecessary," and it also found that some of the fees were "generated for work that lay beyond the scope of [Carey's] appointment." As I now explain, I conclude that neither reason has adequate record support that would allow me to affirm the court's exercise of discretion.

¶30 First, the circuit court did not provide any support for its determination that the legal services Attorney Carey provided were "excessive and unnecessary" or "beyond the scope" of her appointment. The court did not explain why it reached these determinations. Nor, as mentioned, did it identify any particular fee entries—or even categories of entries—that were unnecessary or exceeded the scope of the appointment. In the absence of a record of the court's reasoning, I cannot conclude that the court appropriately exercised its discretion. *See Hartung*, 102 Wis. 2d at 66 ("[T]he exercise of discretion is not unfettered decision-making. A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record.").

¶31 Second, there is a separate problem with the circuit court's determination that Attorney Carey billed for legal services that went beyond the scope of her appointment. Specifically, the court did not identify anything in the record that limited the legal services that Carey could provide to D.M.K., and my independent review of the record does not reveal any such limitation. Indeed, the parties agree that the order appointing Carey contained no such limitation, and

there is no indication that Judge Sharp, who oversaw the proceeding at the time that the majority of the services at issue were performed, implicitly or explicitly limited the tasks that Carey could perform as adversary counsel for D.M.K.

¶32 In its respondent's brief on appeal, the Department attempts to defend the circuit court's determination by arguing that the applicable limitations are found in the Supreme Court Rules.[6] The Department argues that Attorney Carey should have limited her work to those tasks that were undertaken to advance D.M.K.'s interests, and that she instead took on tasks which should have been undertaken by the court-appointed guardian ad litem to promote K.L.M.'s best interests.

¶33 It is possible that, in some circumstances, a circuit court might reasonably reduce a fee award based on its determination that an attorney who was appointed to represent a certain party did work that went beyond what was reasonably necessary to represent that party. Here, however, D.M.K. points to portions of the record that could support the inference that, when Carey took on tasks to promote K.L.M.'s best interests, she did so with Judge Sharp's knowledge and approval, and sometimes even at his request. Indeed, at the time the circuit court terminated Carey's appointment, it explicitly recognized that Carey was likely to argue that she had "done a lot of the heavy lifting here [for the former guardian ad litem and the Department]," and had taken on those responsibilities "by the agreement of the parties." Under the circumstances, the limited record on

---

[6] Specifically, the Department points to SCR 20:1.2(a), which provides that "a lawyer shall abide by a client's decisions concerning the objectives of representation …. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation."

this issue does not support the court's exercise of discretion to reduce fees based on the scope of representation.

## CONCLUSION

¶34 For the reasons above, I affirm the order terminating Attorney Carey's appointment as adversary counsel, I reverse the order directing the county to pay a portion of the fees that Carey requested, and I remand for additional proceedings to address the amount of fees that Carey should be paid for her work from October 2021 through November 2022. On remand, the circuit court should hold additional proceedings in its discretion as required to comply with *DeKeyser*, 29 Wis. 2d at 137.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

18